[Civ. No. 26210. Fourth Dist., Div. One. July 20, 1982.]

THE STATE OF CALIFORNIA ex rel. STATE LANDS
COMMISSION, Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

22

COUNSEL

George Deukmejian, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Nancy Alvarado Saggese, Deputy Attorney General, for Plaintiff and Appellant.

Adrian Kuyper, County Counsel, and Arthur C. Wahlstedt, Jr., Assistant County Counsel, for Defendants and Respondents.

OPINION

**STANIFORTH, J.**—The State of California, acting through the State Lands Commission (the State), brought this action for declaratory re-

lief, an injunction, accounting and restitution against the County of Orange (the County) and its harbors, beaches and parks district. The State seeks to halt the County's practice of spending for its own municipal purposes revenue derived from tidelands improvements at Dana Point Harbor. In 1961, the State granted its interest in these tidelands to the County through a trust grant[1] stating as its purpose the promotion of harbor construction, operation and related activities. The County contends its spending is authorized by a clause of this grant allowing it to "collect and retain rents" from improvements it constructed at the harbor, and upon this premise brought a general demurrer to the complaint. The superior court sustained the demurrer without leave to amend, and dismissed the complaint. This appeal followed. We reverse.

## FACTS

The facts underlying this action outline a trustor-trustee relationship between the State and the County. Upon its admission to the United States in 1850, the State became the owner in fee simple of tidelands[2] within its boundaries. Under Public Resources Code section 6301, the State Lands Commission is vested with all residual jurisdiction and authority over tidelands which have, like these, been granted to another governmental subdivision. The Legislature, by Statutes 1961, chapter 321, section 1, pages 1361-1362, granted in trust to the County the Dana Point[3] tidelands involved in this dispute. This grant provides, in pertinent part:

"There is hereby granted to the County of Orange and to its successors all of the right, title and interest of the State of California held by said State by virtue of its sovereignty in and to all that portion of the tidelands and submerged lands of the Pacific Ocean within the County of Orange, State of California, in the following area: [legal description of Dana Point,] the same to be forever held by said county and by its successors *in trust for the uses and purposes and upon the express conditions following*, to wit:

---

[1]Statutes 1961, chapter 321, section 1, pages 1361-1362.

[2]The court in *City of Berkeley* v. *Superior Court* (1980) 26 Cal.3d 515, 518-519, footnote 1 [162 Cal.Rptr. 327, 606 P.2d 367], explained "tidelands" are lands between the lines of mean high tide and mean low tide.

[3]Dana Point is described by Richard Henry Dana in "Two Years Before the Mast" as a loading point for hides.

"(a) *That said lands shall be used* by said county, and its successors, *only for the establishment, improvement and conduct of a harbor*, and for the construction, maintenance and operation thereon of wharves, docks, piers, slips, quays and other utilities, structures, facilities and appliances necessary or convenient for the promotion and accommodation of commerce and navigation, and for recreational use, public park, parking, highway, playground, and business incidental thereto; and said county, or its successors, shall not, at any time, grant, convey, give or alien said lands, or any part thereof, to any individual, firm or corporation for any purposes whatever; *provided, that said county, or its successors, may grant franchises thereon for limited periods* (but in no event exceeding 50 years), for wharves and other public uses and purposes and may lease said lands, or any part thereof, for limited periods (but in no event exceeding 50 years), *for purposes consistent with the trust upon which said lands are held by the State of California, and with the requirements of commerce and navigation at said harbor, and collect and retain rents from such leases.*" (Italics added.)

The original version of subdivision (a) of this section, before its amendment to the above language, emphasized recreational uses above harbor uses. It provided, in part: "(a) Said lands shall be used by said county and by its successors solely for the establishment, improvement and conduct of public parks, public beaches, parkways, highways, playgrounds, recreation areas, or harbors or for the establishment and construction of bulkheads or breakwaters . . . and other utilities, structures and appliances necessary or convenient for the promotion or accommodation of commerces and navigation, the purposes stated hereinabove, and the protection of the lands within said county." Also, the original version appended no "collect and retain rents" clause, which appears in the enacted version of this statute, and in some 45 other similar grants around the state, to that provision allowing the County to lease lands "for purposes consistent with the trust upon which said lands are held by the State of California."

Further subdivisions of this instrument, as enacted, reserve access, use, mineral, fishing and other rights to the public and the State, and provide the granted lands would have reverted to the State if the County had failed (as it did not) to construct the stated improvements within 10 years.

At a cost of some $12 million of its funds, the County completed (in 1972) construction of the small craft harbor at Dana Point, as contem-

plated by the trust grant.[4] It has leased out various concessions at the harbor (food, fuel, entertainment, etc.) and accumulates considerable revenue from these arrangements. The State's complaint alleges the County uses these revenues for services, purposes and improvements not located on or related to the granted lands. These revenues have been expended on such municipal services as lifeguard services on nearby city beaches, membership in local greenbelt commissions and tourist and visitors' bureaus. In 1979-1980 alone, $1 million of these revenues were spent for nontrust purposes. Upon learning of these expenditures,[5] the State objected to this practice by the County, notifying it trust revenues "must be used on the trust lands or to purchase and improve adjacent uplands to enhance the trust value of the Dana Point tidelands." The State alleges this conduct by the County constitutes: (1) misapplication of trust revenues (Civ. Code, § 2229);[6] (2) violation of trust purposes, trustee duties, and the California Constitution's "gift clause" (Cal. Const., art. XVI, § 6); (3) irreparable injury to the State from this continuing course of conduct.

The County admits by its demurrer (for the purposes of these proceedings) the truth of the State's allegations of manner of its spending of Dana Point revenues, but contends the grant authorizes it to "collect and retain" for its own use that amount of the revenue generated by the County's developments on the harbor which exceeds the costs of maintaining and developing the harbor. Further, it contends its development of the harbor was a form of consideration for the continuing receipt of the revenue.

The trial court initially sustained the demurrer with leave to amend, then, pursuant to telephone conversations with counsel, ruled the demurrer was sustained without leave to amend, and denied the preliminary injunction barring further expenditure of trust revenues. On appeal, the State contends these rulings were abuses of the trial court's discretion.

---

[4]The cost of the harbor construction does not appear in the complaint, but in the County's demurring papers.

[5]The Orange County Grand Jury issued a 1977 report noting the use of these revenues for activities unrelated to the granted lands.

[6]Civil Code section 2229 prohibits a trustee from using or dealing with trust property for its own profit or for any other purpose unconnected with the trust.

DISCUSSION

I

On appeal from a judgment entered on demurrer, the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].) If there is any reasonable possibility the plaintiff can state a good cause of action, it is error and an abuse of discretion to sustain the demurrer without leave to amend. (*Ibid.*; *Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1].) These principles, combined with the rules of statutory construction general and special[7] here applicable, compel the conclusion the complaint adequately states four causes of action. In *People* v. *California Fish Co.* (1913) 166 Cal. 576, 597 [138 P. 79], the court outlined the necessary principles for interpreting statutes authorizing the granting of tidelands: "[S]tatutes purporting to authorize an abandonment of ... public use will be carefully scanned to ascertain whether or not such was the legislative intention, and that intent must be clearly expressed or necessarily implied. It will not be implied if any other inference is reasonably possible. And if any interpretation of the statute is reasonably possible which would not involve a destruction of the public use or an intention to terminate it in violation of the trust, the courts will give the statute such interpretation."

The court in *City of Berkeley* v. *Superior Court, supra,* 26 Cal.3d 515, modernized these guidelines as follows: "[S]tatutes purporting to abandon the public trust are to be strictly construed; the intent to abandon must be clearly expressed or necessarily implied; and if any interpretation of the statute is reasonably possible which would retain the public's interest in tidelands, the court must give the statute such an interpretation." (*Id.,* at p. 528.)

II

The County contends the statutory clause allowing it to "collect and retain rents" constitutes a clear abandonment of the State's or the

---

[7]See *City of Berkeley* v. *Superior Court, supra,* 26 Cal.3d 515, 525, 528; also see the scholarly discussion and authorities cited on the public trust doctrine in *City of Los Angeles* v. *Venice Peninsula Properties* (1982) 31 Cal.3d 288 [182 Cal.Rptr. 599, 644 P.2d 742].)

public's interest in the proceeds of the trust. Conversely, the State asserts the County's construction of the trust grant violates the purposes of the trust and trustee duties. The relevant case law on the subjects of tidelands trusts purposes and assets supports the State's position as pled in its complaint.

In *City of Long Beach* v. *Morse* (1947) 31 Cal.2d 254 [188 P.2d 17], the Supreme Court held the city could not use proceeds from the sale of oil and gas obtained from trust grant tidelands for any purposes other than those specified in the trust conveyances under which the city claimed title to the lands. These purposes were implicit limitations in the grant. (*Id.*, at p. 259.) The court stated: "The Legislature specified purposes relating to the harbor that it deemed beneficial to the state as a whole and did not authorize the city of Long Beach to use the corpus or the income of the trust for strictly local improvements." (*Id.*, at p. 262.) It made no difference whether the oil and gas obtained from tidelands were regarded as corpus or income of the trust. The court disposed of the city's contention (identical to the County's herein) the trust grant restricted only the physical uses of the land, rather than revenues derived from it: "[T]he state's interest in the lands is transferred in trust for certain uses and purposes. The city is a trustee and as such 'assumes the same burdens and is subject to the same regulations that appertain to other trustees of such trusts.' [Citation.] The city of Long Beach contends that the proceeds from the production of oil and gas is merely income from the land and as such is not covered by any provisions of the trust, on the ground that the trust expressly applies only to the physical uses of the land. Whether the fund should be regarded as part of the corpus of the trust or merely as a part of the rents and profits of the land, the city as trustee has no right to devote the proceeds to general municipal improvements unconnected with the trust purposes. . . . If the proceeds are regarded as income from trust property, the trustee, in the absence of a legislative provision to the contrary, has no more right to them than it has to the corpus. [Citations.]" (*Id.*, at pp. 257-258.) The court further noted (citing *Provident Land Corp.* v. *Zumwalt* (1938) 12 Cal.2d 365 [85 P.2d 116]) trust proceeds are "stamped with the character of the property from which they flow." (31 Cal.2d at p. 258.)

In *Mallon* v. *City of Long Beach* (1958) 44 Cal.2d 199 [330 P.2d 423], the court considered a subsequent attempt by the Legislature to free 50 percent of the Long Beach oil and gas revenues from trust con-

trol, and transfer them to the city's treasury,[8] on the basis those monies were "no longer required for navigation, commerce and fisheries, nor for such uses, trusts, conditions and restrictions as are imposed by said acts." (*Id.*, at p. 204.) First, the court concluded the Legislature has the power to make such determinations and findings partially revoking these trusts, as long as subsequent Legislatures' powers to protect. the public's interest in trust puposes are not thereby impeded. (*Id.*, at p. 207.) Next, the court determined those monies freed from trust control by the Legislature were held, under the terms of the act involved and the California Constitution's gift clause (art. XVI, § 6),[9] by the city on resulting trust for the state. (*Id.*., at p. 212.) The court explained: "It is clear in the present case that any interest of the city of Long Beach in the tidelands was acquired not as a 'municipal affair,' but subject to a public trust to develop its harbor and navigation facilities for the benefit of the entire state, and was therefore subject to the control of the Legislature. [Citation.]

"... If the statutory revocation operates as a transfer of the monies affected thereby to the city of Long Beach, such a transfer would be a gift of public monies in violation of section 31 of article IV of the Constitution. [The former gift clause, now art. XVI, § 6.]" (*Id.*, at pp. 209-210; fn. omitted.)

In *Mallon*, as here, the municipality argued no gift took place because its construction of harbor facilities constituted consideration for the receipt of trust improvement revenues. Further, the County argues here its use of its own funds to develop the harbor (rather than the use of trust land oil and gas revenues, as in *Morse* and *Mallon*) renders those cases distinguishable. In *Mallon*, the Supreme Court conclusively disposed of this type of argument as follows: "If, as defendants contend, the city is entitled to those monies, it is entitled to them by reason of the statute. If defendants' interpretation of the statute is the correct one, the city now has available for general municipal expenditures millions of dollars that were not available to it before the enactment of the

---

[8]The Long Beach city treasury's "Public Improvement Fund" expended these funds on such municipal purposes as storm drains, a city incinerator, a public library, hospital, park, streets and highways, parking facilities and fire alarm systems. (44 Cal.2d at p. 211.)

[9]Article XVI, section 6 of the California Constitution (formerly art. IV, § 31) provides in relevant part: "The Legislature shall have no power ... to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever ...."

1951 statute. (*City of Long Beach* v. *Morse, supra*, 31 Cal.2d 254, 262.) There being no benefit to all the people of the state from such a transfer, it would be a gift of public monies and thus prohibited by the Constitution." (44 Cal.2d at p. 210.)

■ Further undermining the County's position is our holding in *City of Coronado* v. *San Diego Unified Port District* (1964) 227 Cal.App.2d 455, 471, 473 [38 Cal.Rptr. 834], that the constitutional gift clause forbids the creation of any proprietary interest in a municipality in connection with a conveyance of tidelands. This court reasoned: "Upon grant to a municipality subject to a public trust, and accompanied by a delegation of the right to improve the harbor and exercise control over harbor facilities, the lands are not placed entirely beyond the supervision of the state, but it may, and indeed has a duty to, continue to protect the public interests. (*Illinois Central R.R. Co.* v. *Illinois*, 146 U.S. 387, 452-453 [13 S.Ct. 110, 36 L.Ed. 1018, 1042].)" (*Id.*, at p. 474.) ■ This authority conclusively refutes the County's argument it has earned the tidelands improvements revenues by its funding of construction and operation of the improvements contemplated in the trust grant, so that no unconstitutional gift resulted. The County's startling characterization of its harbor operation as a "partnership" or "joint venture" with the state is completely without foundation in fact or in law.

A legislative counsel opinion, published in the Senate Journal soon after the *Mallon* decision (*supra*), interpreted *Mallon*'s applicability to a bill for a trust grant similar to the instant one, the Port San Luis Harbor District, containing a clause allowing the district to "collect and retain rents" from harborside leases, including some previously entered into by the State. (Ops.Cal.Legis. Counsel, No. 9710 (Apr. 13, 1955) Tideland Grants.) The legislative counsel concluded: "The bill makes the conveyance subject to the trust. Therefore, no question of invalid gifts is presented. In the *Mallon* case, the California Supreme Court expressly upheld such grants as the one which would be made by [the bill] . ... . The bill does contain a provision expressly granting to the district the rents accruing from certain leases. However, the revenues accruing therefrom are also subject to the trusts, uses, and conditions under which the district would hold these lands. (*City of Long Beach* v. *Morse*, 31 Cal.2d 254.) Therefore, this provision does not present any question as to invalid gifts." (*Ibid.*)

We conclude the presence or absence of the term "collect or retain rents" in a trust grant does not decide the issue. Rather, the issue to be decided under the rules of statutory interpretation of *People v. California Fish Co., supra,* 166 Cal. 576, and *City of Berkeley v. Superior Court, supra,* 26 Cal.3d 515, is whether the Legislature clearly evidenced its intent to abandon the public trust and the public interest in tidelands and their revenues. (See *City of Long Beach v. Morse, supra,* 31 Cal.2d at p. 298.) No such intent is evident in the statute here under consideration. No findings of the necessity or advisability of cutting off the State from this source of revenue are to be found in it, or elsewhere. (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 482 [91 Cal.Rptr. 23, 476 P.2d 423].) If we could find an intent to abandon the public trust, the constitutional prohibition against a gift of public monies or things of value remains as a barrier to the County's activities. Our duty is to strictly construe the statute to, if possible, "retain the public's interest in tidelands." (*City of Berkeley v. Superior Court, supra,* 26 Cal.3d 515.) In so doing, we hold it was error to sustain the demurrer.

Judgment reversed and cause remanded with directions to reinstate the complaint and reconsider the motion for preliminary injunction.

Cologne, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied August 6, 1982, and respondents' petition for a hearing by the Supreme Court was denied October 21, 1982. Mosk, J., Newman, J., and Kaus J., were of the opinion that the petition should be granted.