[No. B059314. Second Dist., Div. One. Dec. 21, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARLES H. KEATING, JR., et al., Defendants and Respondents.

## Counsel

Gil Garcetti and Ira Reiner, District Attorneys, Harry B. Sondheim and Patrick D. Moran, Deputy District Attorneys, for Plaintiff and Appellant.

Thomas S. Sayles, G. W. McDonald, Alan S. Weinger and George A. Crawford as Amici Curiae on behalf of Plaintiff and Appellant.

Kirkland & Ellis, Stephen C. Neal, Philip S. Beck, Jeffrey S. Powell, Scott D. Devereaux, Layman, Jones & Dye, David W. Wiechert and Dina M. McKenna for Defendants and Respondents.

## Opinion

**ORTEGA, Acting P. J.**—The People appeal from orders sustaining demurrers without leave to amend (Pen. Code, § 1002 et seq.) and setting aside (Pen. Code, § 995), and judgments dismissing, all counts of a second amended indictment charging defendants Charles H. Keating, Jr., and Ray C. Fidel with selling unqualified securities. (Corp. Code, §§ 25110, 25540.)[1] The People theorized that the defendants violated the Corporate Securities Law by selling securities (bonds) without complying with certain terms and conditions of the qualification granted by the Corporations Department authorizing the sale. The defendants successfully argued that such acts are not crimes under the Corporate Securities Law. We conclude that selling securities without complying with the terms and conditions of the qualification authorizing their sale is a crime, and the trial court erred in holding otherwise. We reverse the orders and judgments and reinstate the dismissed charges.[2]

---

[1]Unless otherwise indicated, all further statutory references are to the Corporations Code.

[2]The orders and judgments are appealable. (Pen. Code, § 1238, subds. (a)(1), (2), and (8).) We consolidated appeals taken from separate orders. The trial court dismissed identical

## FACTS

From 1986 through April 1989, Keating was chief executive officer of American Continental Corporation (ACC). Lincoln Savings was an ACC subsidiary. During that period, ACC sold a series of securities known as subordinated debentures, debt instruments, or bonds, to Lincoln customers in Lincoln's California branches. In order to sell such securities legally in California, they had to be "qualified" by the Corporations Department.[3]

Securities may be qualified in several ways. ACC chose coordination, the method regulated by section 25111. Essentially, securities for which registration statements are filed under the Federal Securities Act may be qualified for California sale by filing copies of the registration statement and other related documents with the Corporations Department.[4]

---

charges against several codefendants. Codefendant Judy J. Wischer was dismissed as a party to the appeal. All but one codefendant later pled guilty to various charges. Thus, we need not discuss the codefendants' conduct. References to Keating throughout the opinion also refer to Fidel. The People do not challenge the trial court's dismissal of counts alleging violations of other sections. Keating was convicted of 17 other Corporations Code violations and sentenced to 10 years' imprisonment. We recently affirmed his convictions and sentence. (*People* v. *Keating* (1993) 16 Cal.App.4th 280 [19 Cal.Rptr.2d 899].) On September 30, 1993, the Supreme Court granted review in the earlier case (S033855) after oral argument in this case. Later, Keating was convicted of related federal charges and separately sentenced. Our facts are taken from the state grand jury testimony and express or implied stipulations or concessions by the parties, and are undisputed. Because the dismissed charges all alleged violations of sections 25110 and 25540 involving similar conduct against separate victims, and the appeal raises only one legal issue common to all the charges, we need not separately discuss facts regarding each victim and charge.

[3]Omitting certain irrelevant exceptions, "[i]t is unlawful for any person to offer or sell in this state any security in an issuer transaction . . . unless such sale has been qualified under Section 25111, 25112 or 25113 . . . ." (§ 25110; see *People* v. *Feno* (1984) 154 Cal.App.3d 719, 724-725 [201 Cal.Rptr. 513].) "[A]ny person who willfully violates any provision of this law, or who willfully violates any rule or order under this law, shall upon conviction be fined not more than two hundred fifty thousand dollars ($250,000) or imprisoned in the state prison, or in a county jail for not more than one year, or be punished by both such fine and imprisonment . . . ." (§ 25540.) Section 25540 exempts from imprisonment violators who prove they lacked knowledge of the rule or order, an issue not before us. A 1988 amendment increased the maximum fine and added a provision making certain specified violations exclusively felonies.

[4]"(a) Any security for which a registration statement has been filed under the Securities Act of 1933 in connection with the same offering may be qualified by coordination under this section . . . . [¶] (b) [A]n application for qualification under this section shall contain the following information and be accompanied by the following documents . . . : (1) a copy of the registration statement under the Securities Act of 1933, together with all exhibits . . . ; (2) an undertaking to forward to the commissioner all future amendments to the registration statement under the Securities Act of 1933 . . . promptly and in any event not later than the first business day after the day they are forwarded to or filed with the Securities and Exchange Commission, whichever first occurs; and (3) such other information as may be required to

As with all applications for qualification by coordination, the department required ACC to produce a list of all ACC employees authorized to sell the bonds and to name one of its officers to supervise the selling agents. The department also required that 1) all selling agents be ACC employees; 2) the selling agents receive no bonuses or additional compensation for bond sales; and 3) the agents provide a prospectus explaining the bonds' financial structure before or during the sale. These requirements were designed to ensure that 1) all sales were made by agents covered by the mandatory bond ACC was required to post, and buyers would not confuse the noninsured, high risk ACC securities with federally insured certificates of deposit sold by Lincoln; 2) the selling agents lacked motivation for overreaching during sales; and 3) potential buyers had accurate information about the bonds before deciding to buy. Keating does not dispute that these three conditions were part of the qualification authorizing the sales.

Regarding each relevant dismissed count, ACC failed to meet at least one of three conditions: either 1) the selling agent was a Lincoln, not ACC, employee; 2) the selling agent received a bonus for the sale; and/or 3) the buyer either never was given a prospectus or was mailed one after the completed sale. For purposes of appeal, Keating does not dispute that 1) the sales in the relevant dismissed counts violated the conditions of the qualification or 2) he knew of these acts by ACC or Lincoln employees.

Regarding the relevant dismissed counts, the trial court either sustained demurrers without leave to amend or granted motions to set them aside, and later entered judgments dismissing them, accepting Keating's argument that selling qualified securities in violation of the conditions in the authorizing qualification was not a crime.

### DISCUSSION

■ "On appeal from a judgment entered on demurrer, the allegations of the [indictment] must be liberally construed with a view to attaining substantial justice among the parties. [Citation.] If there is any reasonable possibility the plaintiff can state a good cause of action, it is error and an abuse of discretion to sustain the demurrer without leave to amend. [Citations.]" (*State of California* ex rel. *State Lands Com.* v. *County of Orange* (1982) 134 Cal.App.3d 20, 26 [184 Cal.Rptr. 423].)

"The function of a demurrer is to test the sufficiency of the [indictment] by raising questions of law. [Citation.] The [indictment] must be given a

evidence compliance with any rules of the commissioner. . . . [¶] (c) [Q]ualification of the sale of securities under this section automatically becomes effective (*and the securities may be offered and sold in accordance with the terms of the application as amended*) at the moment the federal registration statement becomes effective . . . ." (§ 25111, italics added.)

reasonable interpretation and read as a whole with its parts considered in their context. [Citation.] A general demurrer admits the truth of all material factual allegations of the [indictment]; plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court. [Citation.] 'As a reviewing court we are not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court.' [Citation.]" (*Aragon-Haas* v. *Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 238-239 [282 Cal.Rptr. 233].) Thus, we independently review this legal issue based on undisputed facts.

■ In support of the trial court's ruling, relying on established principles, Keating argues that the Corporate Securities Law does not, on its face, prohibit selling qualified securities in violation of conditions in the authorizing qualification. " 'The fundamental rule of statutory construction is that the court ascertain legislative intent so as to effectuate the purpose of the law. . . . [T]he court cannot create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. [Citation.] The court must give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it.' [Citation.]" (*People* v. *Baumgart* (1990) 218 Cal.App.3d 1207, 1219 [267 Cal.Rptr. 534].)

■ Moreover, ". . . a fundamental principle of our tripartite form of government [is] that subject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested exclusively in the legislative branch. [Citations.] Stated differently, there are no common law crimes in California. [Citations.] '. . . In order that a public offense be committed, some statute, ordinance or regulation prior in time to the commission of the act, must denounce it . . . .' [Citation.] [¶] Settled rules of construction implement this principle. Although the Penal Code commands us to construe its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4), it is clear the courts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. [Citation.] Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly within the import of their language. [Citation.] Indeed, 'Constructive crimes—crimes built up by courts with the aid of inference, implication, and strained interpretation—are repugnant to the spirit and letter of English and American criminal law.' [Citation.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631-632 [87 Cal.Rptr. 481, 470 P.2d 617, 40

A.L.R.3d 420].) Keating concludes that contrary authority either is dicta, or construed a section of the Corporate Securities Law which did not survive its 1968 amendment.

█ In response, the People and the department "emphasize [that] the main objective of the securities law is to protect the public against the imposition of insubstantial, unlawful and fraudulent stock and investment schemes and to promote full disclosure of all information that is necessary to make informed and intelligent investment decisions. [Citation.]" (*People* v. *Baumgart, supra*, 218 Cal.App.3d at p. 1220.) █ Without relying on legislative history, the People argue sections 25110-25111 prohibit selling qualified securities in violation of the terms of the authorizing qualification, and that case law and commentary support them.

We agree with the People and the department. First, section 25111, subdivision (c), which defines the proper method of qualification by coordination, expressly states that "qualification of the sale of securities under this section automatically becomes effective (*and the securities may be offered and sold in accordance with the terms of the application as amended*) at the moment the federal registration statement becomes effective . . . ." (Italics added.) The italicized portion of section 25111 states that securities qualified by coordination must be sold in accordance with the terms of the application. Thus, contrary to Keating's argument that the statute does not prohibit his conduct, since the qualification includes all the terms of the application and any conditions required by the department, section 25111 expressly prohibits sales of qualified securities in violation of conditions imposed by the department. Keating does not dispute that section 25110 makes it "unlawful" to sell unqualified securities, and that section 25540 makes any violation of the Corporate Securities Law, which includes sections 25110 and 25111, a crime. Thus, we think it clear that, read together, sections 25110, 25111, and 25540 make selling securities qualified by coordination in violation of the terms of the qualification a crime.

Moreover, given the Corporate Securities Law's purpose as stated in *Baumgart*, a case cited by and relied upon by Keating, we think a fair reading of sections 25110 and 25111 shows the flaw in Keating's statutory analysis. It would make no sense to prohibit as crimes sales of unqualified securities, and to permit the department to set conditions for qualification and deny qualification to securities which failed or refused to meet those conditions, and yet deny criminal sanctions to the sale of securities in violation of those very conditions. Potential sellers could agree to do anything demanded by the department secure in the knowledge that they could sell their securities in violation of every promise made in their applications

and not be subject to criminal prosecution. We reject Keating's interpretation that, although the purpose of requiring qualification is to protect potential consumers from the evils of unregulated securities, once the qualification is obtained, the sellers can sell unregulated securities without fear of criminal sanctions.

■ Thus, we agree "[i]t is important to recognize that because of the methods of qualification by coordination and notification, where no authorizing document is issued by the Commissioner to make such qualification effective, the conditions, if any, required by the Commissioner in connection with such a qualification must be set forth as part of the application describing the terms and conditions under which the securities will be offered and sold. Should the Commissioner impose a condition in connection with such a qualification, it will generally be required that the application be amended to include the condition and terms of compliance therewith as part of the application. *Since the qualification is effective only with respect to the terms and conditions of the offering as set forth in the application, any violation of such terms and conditions would nullify the effectiveness of the qualification with respect to sales made in violation of those terms and conditions.*" (1 Marsh & Volk, Practice Under the Cal. Securities Laws (rev. ed. 1993) Conditions of Qualification, § 9.01[2], p. 9-3, italics added.)

■ Both in his brief and at oral argument, Keating ably argues that selling securities qualified by coordination in violation of the terms of the qualification in the way demonstrated to the grand jury will subject him to a variety of both civil penalties, such as voiding the sales, and to criminal prosecution for making false statements in securities sales, charges of which he stands convicted. Keating concludes we need not stretch to criminalize his conduct under sections 25110 and 25111, since it is otherwise adequately punished.

Keating's argument ignores both the express statutory language and the obvious intent disclosed by a fair reading of the three statutes as a whole (§§ 25110, 25111, & 25540). Moreover, Keating vigorously disputed that he violated the other sections of the Corporate Securities Law, and continues to do so before the Supreme Court. Thus, we find this argument at least logically inconsistent.

■ Although our conclusion does not rely on legislative history, material regarding the 1968 revision from the legislative bill file of the Assembly Committee on Judiciary states: "It is possible to commit fraud . . . even after obtaining a permit [to sell securities] without violating the present law. Under the proposed law, even exempt securities will be subject to the penal provisions and civil liabilities provided."

Moreover, as discussed by the parties at oral argument, the Legislature recently amended section 25110 to, among other things, make criminal by rendering unqualified "[t]he offer or sale of [a qualified] security in a manner that varies or differs from, exceeds the scope of, or fails to conform with either a material term or material condition of qualification as set forth in the permit or qualification order, or a material representation as to the manner of offering which is set forth in the application for qualification. . . ." (Sen. Bill No. 955 (1993-1994 Reg. Sess.), enacted as Stats. 1993, ch. 762.) Section 5 of Senate Bill No. 955 states: "It is the intent of the Legislature that the amendments . . . of this act [to section 25110] are declarative of the existing law of this state." Governor Wilson signed Senate Bill No. 955 on October 2, 1993.

Although this recent statutory amendment moots future arguments similar to Keating's, we publish our decision at the request of the People and the department for guidance in pending cases.

Earlier cases interpreting the Corporate Securities Law before its 1968 amendment uniformly stated: "The issuance and sale by the defendant of its capital stock, or an agreement for such sale, in a manner not in conformity with the permit issued to it by the commissioner of corporations, would be illegal and void." (*Domenigoni* v. *Imperial Live Stock etc. Co.* (1922) 189 Cal. 467, 469 [209 P. 36].)

" 'It is the rule in this state that permits issued by the corporation commissioner for the sale of stock must be strictly complied with. [Citation.] No "thinly veiled attempt to circumvent the manifest purpose of this salutary legislation (Blue Sky Law) should go unwhipped of justice". [Citation.] Speaking of the Corporate Securities Act, and evasions of the provisions thereof, our courts have said: "If such subterfuges were permitted, the statute would soon become a dead letter and the object it was designed to accomplish would be frustrated by the very persons against whose practices it is directed." (*Domenigoni* v. *Imperial Live Stock etc. Co.*, [*supra*,] 189 Cal. [at p.] 474 . . . .)' " (*Mannion* v. *Baldwin* (1933) 217 Cal. 600, 603 [20 P.2d 678]; *Blank* v. *Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456, 462 [67 P.2d 376]; *Parrish* v. *American Ry. Emp. Pub. Corp.* (1927) 83 Cal.App. 298, 302 [256 P. 590].)

In *People* v. *Marvin* (1941) 48 Cal.App.2d 180, 195 [119 P.2d 413], the court affirmed the defendants' convictions for selling securities in violation of the conditions imposed in the authorizing qualification, and approved a jury instruction stating that " 'if, while said permit was in full force and effect, the defendants made any sales of stock contrary to or in violation of

the provisions of said permit then and in that event he or they would be guilty of a violation of the Corporate Securities Act the same as if no permit had been granted.'" Keating's attempt to distinguish these cases is not persuasive. While the issue in *Marvin* was whether the securities had been sold in violation of the conditions, and the defendants did not raise the same argument as Keating, the case nonetheless supports the People's position. Keating also attempts to distinguish the earlier cases because they construed an earlier section of the Corporate Securities Law expressly prohibiting similar conduct which was not retained in the 1968 amendments. As discussed above, the emphasized language in section 25111 contains the same prohibition.

Finally, in *People* v. *Murphy* (1973) 35 Cal.App.3d 905 [111 Cal.Rptr. 295], the court, construing the post-1968 Corporate Securities Law, affirmed defendants' convictions for selling securities in violation of the conditions contained in the authorizing qualification. Although defendants in *Murphy* did not raise Keating's argument, the case supports the People's position.

Thus, we hold that selling qualified securities in violation of conditions imposed in the authorizing qualification is a crime prohibited by sections 25110 and 25540, and the trial court erred in finding otherwise and dismissing the counts charging Keating with those crimes.

### DISPOSITION

We reverse the orders and judgments dismissing the counts in the indictment charging Keating and Fidel with violating sections 25110 and 25540. We remand the matter to the trial court with instructions that it reinstate the dismissed charges alleging violations of those sections.

Vogel (Miriam A.), J., and Masterson, J., concurred.