DRAPER, P. J.
 

 Defendant was indicted on 10 counts of accepting bribes (Pen. Code, § 68) and one count of conspiracy (Pen. Code, § 182) to accept bribes. One bribery count was dismissed on defendant’s motion, and the jury failed to reach a verdict upon another. It found him guilty of the
 
 *798
 
 conspiracy charge and eight counts of accepting bribes. He was sentenced to prison and appeals.
 

 Defendant was for many years the tax assessor of the City and County of San Francisco. The essence of the charges is that he accepted bribes to lower assessments upon personal property.
 

 Defendant argues that a “fictitious rule of law” requiring assessment at fixed percentages of actual value was imposed upon him, and that the jury may have found him guilty of the present charges merely because his “stewardship ’ ’ failed to produce taxes upon these amounts.
 

 The record does not bear him out. There was substantial evidence that the common or rule-of-thumb assessment of personal property in his office was based upon 50 percent of actual value of inventory, and 25 percent of such value of equipment. It was repeatedly pointed out that many factors could contribute to lesser assessments. It was never contended that deviation below this common practice was of itself improper, much less criminal. There was evidence that substantial decreases below this guideline conjoined with payments to the assessor by or on behalf of beneficiaries. The jury was instructed, and clearly understood, that the issue before it was not whether tax savings were enjoyed by some personal property owners, but whether the assessor accepted bribes for benefits bestowed.
 

 Since it was made clear that there was no rigidity in the 50 percent-25 percent valuation guide, and that there was no violation of law in deviation below that line, there was no error in somewhat restricting defendant’s attempted showing of other assessments below these percentages. Further testimony along that line would have unduly cluttered the record (see former Code Civ. Proc., §§ 1868, 2044). For the same reason, the court properly sustained objection to evidence of increases in real property assessments. The court stated it would admit evidence of real property assessment increases if they were premised upon or connected with decreases in personal property assessments. No offer of such proof was made. We find no error in the rulings.
 

 Nor was there error in permitting Newstat to testify whether, on the basis of his experience, he would have allowed certain deductions ordered by defendant. Newstat, a longtime deputy assessor, had for many years been delegated the duty of making just such judgments for the assessor, and he was thoroughly familiar with the practice of the office. Thus his
 
 *799
 
 testimony was admissible as that of an expert, or, if he were not so deemed, was proper to show deviation, specially ordered by defendant, from standard office practice which the witness well knew. Moreover, it is by no means clear that objection at trial properly preserved the issue for appeal.
 

 Defendant asserts error in the refusal of his instructions 24 and 26. Both would single out named witnesses for comment on their credibility, and thus were improper
 
 (People
 
 v.
 
 Lyons,
 
 50 Cal.2d 245, 271 [324 P.2d 556]). No. 24 charges that testimony of an “informer,” without defining the term, is to “be considered with caution and weighed with great care.” We find no authority for this asserted rule, nor for the view that the named witnesses were “informers.” No. 26 suggests that Tooke and Newstat had been granted immunity, and advises that “such circumstances” may be considered as bearing upon their testimony. Portions of the requested charge, e.g., the statement that defendant can “offer criticism” of their testimony, are not a proper subject of instruction. These, and some incorrect statements of law, warranted rejection
 
 (People
 
 v.
 
 Housmem,
 
 44 Cal.App.2d 619, 628 [112 P.2d 944]).
 

 There was evidence that deputy Newstat received payments from benefitted taxpayers, portions of which he passed on to defendant. After instructing the jury that Newstat was an accomplice as a matter of law, the court stated that eight witnesses were not accomplices. As to all other prosecution witnesses, the question whether they were accomplices was left to the jury, on proper definition of the term.
 

 Defendant asserts error in the instruction that Tooke, Skelly, Forbush and Parsons were not accomplices. Before 1915, it was held that the giver and the taker of a bribe, although guilty of different crimes under the code, were accomplices
 
 (People
 
 v.
 
 Coffey,
 
 161 Cal. 433 [119 P. 901, 39 L.R.A. N.S. 704]). In 1915, the statute requiring corroboration of accomplices (Pen. Code, § 1111), was amended to define an accomplice as “one who is liable to prosecution for the identical offense charged against the defendant on trial” (Stats. 1915, ch. 457, p. 760). It is recognized that this amendment was directly designed to abrogate the rule of
 
 Coffey (People
 
 v.
 
 Clapp,
 
 24 Cal.2d 835, 838 [151 P.2d 237]). Thus when one statute defines a crime which necessarily requires the participation of two or more persons,, but fixes punishment for only one of them, and another statute separately provides that the other participant is guilty of
 
 *800
 
 a distinct crime, each is guilty of a criminal offense, but the offense of which each is guilty is separate and distinct from that of the other. It follows that the definitions of accessory, aider and abettor (Pen. Code, §§ 31, 971) do not operate to subject either to prosecution under the section proscribing the act of the other, and neither falls within the code definition of an accomplice as to the act of the other
 
 (id.).
 
 Bribery is such a crime. The giver whose offense is specifically, made a crime (Pen. Code, § 67) is not an accomplice in the separate and distinct crime (Pen. Code, § 68) of the receiver (see
 
 People
 
 v.
 
 Clapp, supra,
 
 at p. 839;
 
 People
 
 v.
 
 Brigham,
 
 72 Cal.App. 2d 1, 5-7 [163 P.2d 891]). By code definition, the giver is guilty only if he gives or offers with intent to influence the officer. The officer who asks or receives payment is guilty only if he does so with the understanding that his official action will be influenced thereby.
 

 Nor are the giver and receiver guilty of a conspiracy, because the two crimes require different motives or purposes
 
 (People
 
 v.
 
 Keyes,
 
 103 Cal.App. 624 [284 P. 1096]—opinion of Supreme Court on denial of hearing; cf.
 
 Calhoun
 
 v.
 
 Superior Court,
 
 46 Cal.2d 18 [291 P.2d 474]). It has been held that an intermediary may be the agent of both giver and receiver
 
 (People
 
 v.
 
 Davis,
 
 210 Cal. 540, 557 [293 P. 32]). While we might have some difficulty in reconciling the rule that giver and receiver do not have the same motive with the view that a single intermediary can simultaneously entertain both motives, we are bound by and accept the rule of
 
 Davis (Auto Equity Sales, Inc.
 
 v.
 
 Superior Court,
 
 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]). We note, however, that the. facts of
 
 Davis
 
 were unusual and, we think, notably different from those before us. Getzoff, the intermediary in
 
 Davis,
 
 gave no money of his own and received no benefit from the action induced by payment. Thus he could be an accomplice of the bribe receiver. Here Tooke and Skelly had full title to the fees from which they paid defendant and could be found to intend the payments to influence his official actions towards their clients, thus maintaining the flow of fees to them. Borbush was an officer of the corporation for which he acted. He paid funds of this corporation, together with campaign contributions collected by him from others, to defendant. There is evidence that his corporation .received -favorable" tax consideration from defendant. -Thus, these...three exemplified, both characteristics of the bribe .giver—each paid his own-funds and each sought a personal benefit from the official
 
 *801
 
 action sought to be induced by the gift. Any inference that any of the three acted from motives of philanthropy or friendship would be completely unreasonable on all the evidence.
 

 It is true that a single line of testimony quotes Skelly as saying, when filing a tax declaration with Newstat:
 
 .
 
 this doesn’t mean anything to me. I am just doing it for Russ.” Even in the unlikely event that the jury might have found in this testimony a basis to infer that Skelly’s true motive was to aid Wolden, thus making him defendant’s accomplice, the removal of the issue from the jury was not prejudicial. Although called by the prosecution, Skelly was essentially a defense witness. He insisted that the sums he paid to defendant, also an attorney, were but referral fees and wholly unconnected with any San Francisco tax matters. His testimony was injurious to defendant only if it was not taken at face value. Had he been slightly more convincing, he could be termed a defense witness. In this odd situation of testimony harmful largely to the extent it was disbelieved, it could well have been error to instruct that he could be considered an accomplice (see
 
 People
 
 v.
 
 Hartung,
 
 101 Cal.App.2d 292, 295 [225 P.2d 614]). Skelly’s testimony did not relate to any of the 10 counts of accepting bribes. As to the conspiracy count, the only one for which the jury could have looked to it, it was but one item in a mass of incriminating evidence. We conclude that the instruction that Skelly was not an accomplice, even if in error, could not have been prejudicial to defendant, and does not warrant reversal.
 

 As it related to Parsons, the instruction could not have prejudiced the defense. The bribery count which turned upon his payment to defendant was the one count upon which the jury failed to agree. It was later dismissed, and thus is not the basis of any substantive conviction. It could have affected only the conviction upon the conspiracy count. But it is inconceivable that the jury, unable to agree that defendant received a bribe from Parsons, could have relied upon Parsons’ evidence of that single transaction in finding defendant guilty of conspiracy.
 

 We find no error in sustaining objections to cross-examination of Wright upon a letter written by him to a newspaper. The essence of the letter was its denial of knowing wrongdoing by Wright, and of his participation in any act of defendant which Wright knew to be wrong. This is not inconsistent with his testimony on direct, would serve no purpose
 
 *802
 
 of impeachment, and would but prolong the trial by introducing collateral matters.
 

 The record fails to show that pretrial publicity in any way restricted the choice of fair and impartial jurors. Our review convinces us that newspaper and other publicity during trial would not, if known to the jury, have affected the result. Moreover, the trial court repeatedly admonished the jury not to read or listen to any reports relating to the trial.
 

 The remaining contentions of counsel do not require detailed discussion here. We have reviewed them in detail, and find no error indicated by them.
 

 Judgment affirmed. The purported appeal from “sentence” and from unspecified orders is dismissed.
 

 Salsman, J., and Agee, J.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied December 8, 1967, and appellant’s petition for a hearing by the Supreme Court was denied January 3, 1968.
 

 *
 

 Assigned by the Chairman of the Judicial Council.