[Crim. No. 17481. In Bank. Nov. 26, 1974]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE MITCHELL HOOVER, Defendant and Appellant.

**COUNSEL**

Martin F. Bloom, under appointment by the Court of Appeal, Harold F. Tyvoll and Richard L. Tyree for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, A. Wells Petersen, Mark L. Christiansen and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—Defendant appeals from a judgment, following a jury trial, finding him guilty of (1) discharging a firearm at an inhabited dwelling (Pen. Code, § 246) while armed with a dangerous weapon (Pen. Code, §§ 3024 and 12022); (2) assault with a dangerous weapon (Pen. Code, § 245, subd. (a)) by using a firearm (Pen. Code, § 12022.5); and (3) possession of a billy club (Pen. Code, § 12020). ██ The Attorney General concedes that Penal Code sections 12022 and 3024 cannot be applied

where the conviction is for violation of section 246 (*People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862]).[1]

The sole issue on appeal is whether the court erred in refusing to give requested instructions defining an accomplice and stating the rules relating to accomplice testimony. (Pen. Code, § 1111; CALJIC Nos. 3.10, 3.11, 3.12, 3.18.) We conclude under the circumstances that the denial was correct and the judgment must therefore be affirmed.

Defendant was a "combat team member" in a right-wing paramilitary group known as the Secret Army Organization (SAO). The expressed aim of the group was to prevent, by violent means if necessary, a Communist takeover of the government. Defendant's superior in the organization was one Barry Godfrey who, unknown to defendant, was serving in an undercover capacity for the FBI. Godfrey's assignment was to infiltrate right-wing direct action organizations and to convey information about the groups to his superiors. To this end Godfrey had been associated with the Minutemen from 1967 to 1971 and thereafter with the SAO. By 1972 he had risen to the rank of San Diego County commander, assistant state commander, and state intelligence officer of the SAO.

On the evening of January 6, 1972, Godfrey took defendant in his car for the purpose of conducting a "surveillance operation" of suspected left-wing centers in San Diego. One of the places under surveillance was the residence of Peter Bohmer, whom the SAO considered to be an ideological opponent. Their express plan was to record the license plate numbers of persons who visited or occupied the Bohmer residence. After a brief stop at Nazi party headquarters and a short surveillance of an enlisted men's coffee house, they arrived at the residence at approximately 8:30 p.m. They parked, observed the house from the car, walked up to the house and placed an SAO sticker on the front door, walked around the block, re-entered the car, and continued their observation of the house from two additional parked positions. At this point defendant was armed with a .45 caliber automatic pistol and a .22 caliber Derringer. Underneath the front seat was Godfrey's semi-automatic pistol, which defendant began handling when the pair returned to the car.

As the car passed once more in front of the Bohmer residence, with the house on the right and defendant occupying the passenger's seat also on the right, defendant suddenly fired two shots from Godfrey's gun at the house. One of the bullets passed through the window of the house and

---

[1]This error resulted in no prejudice, however, as execution of the sentence on count I was stayed pending service of the sentence on count II, and thereafter permanently.

entered the arm of a woman in the front room. Defendant attempted to fire a third shot but the weapon jammed. Godfrey told defendant to stop firing, drove on, and eventually returned defendant to his home. Godfrey did not report the incident to the police, but the next day reported it to his FBI superior. He then turned over to the FBI both the pistol and a jacket which defendant had been wearing at the time of the shooting and had given to Godfrey to be destroyed.

The foregoing facts were testified to by Godfrey; defendant interposed an alibi defense, denying he had been with Godfrey at the scene on the evening in question.[2]

Penal Code section 1111 provides that "[a] conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. . . ." ██ The section defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant. . . ." In order to be charged with the identical offense as the defendant it would be necessary for the witness to be considered a principal under the provisions of section 31, which includes "[a]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present, have advised and encouraged its commission. . . ." Merely aiding in the escape of a principal does not result in liability as a principal, but only as an accessory under Penal Code sections 32 and 33. Thus in order to bring Godfrey within the definition of an accomplice it would not have been sufficient to show that he aided in defendant's escape. (*People v. Johnson* (1971) 18 Cal.App.3d 458, 463 [95 Cal.Rptr. 316, 96 Cal. Rptr. 695]; *People v. Wolden* (1967) 255 Cal.App.2d 798, 804 [63 Cal. Rptr. 467].) Rather it had to be demonstrated that he acted with "guilty knowledge and intent with regard to the commission of the crime." (*People v. Duncan* (1960) 53 Cal.2d 803, 816 [3 Cal.Rptr. 351, 350 P.2d 103]; *People v. Gordon* (1973) 10 Cal.3d 460, 466-467 [110 Cal.Rptr. 906, 516 P.2d 298].)

Defendant contends there was sufficient evidence of Godfrey's knowing complicity in the shooting to warrant the giving of accomplice instructions. He asserts that notwithstanding the fact that the testimony of Godfrey with regard to the latter's purposes and motivations was wholly uncon-

---

[2]There was some evidence that the alibi was fabricated. While defendant was incarcerated in the San Diego County jail he was visited by one Jerry Lynn Davis. A sheriff's deputy confiscated a note that defendant was holding up to the window separating him and Davis. The contents, which were read to the jury, contained suggestions for an alibi.

tradicted, the requisite guilty knowledge could be inferred from his conduct: i.e., Godfrey picked up the defendant; the car and gun used belonged to Godfrey; he conceivably could have been aware that defendant was handling the gun with the intent to use it;[3] Godfrey slowed down, thus giving defendant an opportunity to shoot; he provided the means of escape; and he did not report the matter to the local authorities.

 The well-settled rule with respect to the provinces of judge and jury in determining whether a witness is an accomplice is: if the material facts are in dispute, the question is factual and lies in the domain of the jury; conversely, if the facts are not in dispute the question is legal and to be determined by the trial judge. (*People* v. *Gordon* (1973) *supra*, 10 Cal.3d 460, 467; *People* v. *Hill* (1967) 66 Cal.2d 536, 555-556 [58 Cal. Rptr. 340, 426 P.2d 908]; *People* v. *Rosoto* (1962) 58 Cal.2d 304, 329-330 [23 Cal.Rptr. 779, 373 P.2d 867]; *People* v. *Cisneros* (1973) 34 Cal. App.3d 399, 413 [110 Cal.Rptr. 269]; *People* v. *Brocklehurst* (1971) 14 Cal.App.3d 473, 478 [92 Cal.Rptr. 340]; *People* v. *Williams* (1970) 10 Cal.App.3d 638, 641 [89 Cal.Rptr. 143]; *People* v. *Hensling* (1962) 205 Cal.App.2d 34 [22 Cal.Rptr. 702].) As stated in *People* v. *Jones* (1964) 228 Cal.App.2d 74, 94-95 [39 Cal.Rptr. 302]: "Whether a witness for the prosecution is or is not an accomplice may be a question of law or fact. Where the facts with respect to the participation of a witness in the crime for which the accused is on trial are clear and not disputed, it is for the court to determine whether he is an accomplice. . . . Where such witness is an accomplice as a matter of law, the court should so charge. . . . Conversely, where, as a matter of law, the witness is not an accomplice, the court does not err in refusing to charge that he is or in refusing to submit the issue to the jury."

To state the rule, however, does not resolve the problem before us, for none of the cases isolates the precise meaning of "disputed facts." Here defendant presented an alibi defense, denying generally any connection with the crime or the witness at the time of the incident. Aside from character witnesses, the evidence introduced by defendant went solely to the question of *his* involvement in the crime.[4] Yet the mere fact this evidence conflicted with Godfrey's version of defendant's role in the crime cannot be considered a "dispute" within the meaning of the rule, as the

---

[3]On this point there was some evidence that defendant had been handling the gun for about 10 minutes prior to the actual shooting. However there was no showing this was unusual; rather there was considerable testimony that defendant was attracted to guns and took visible delight in handling and using them.

[4]In addition, a bystander who witnessed the shooting gave a description of the gunman that could not have fitted defendant. From the verdict it is evident the jury accorded little weight to this witness' observations.

instant issue is not the complicity in the crime of defendant but of Godfrey. On this question the testimony is wholly one-sided: Godfrey testified he had no inkling that the shooting was about to occur; he drove to the Bohmer residence only as an adjunct to his feigned activities as an SAO officer; he ordered defendant to cease firing immediately after the latter began to shoot; he turned the evidence over to his FBI superiors and relied on them to take whatever further steps were necessary consistent with protecting his cover; and at no time did he have any personal animosity towards Peter Bohmer or desire to harm him or any of the other inhabitants of the house. There was no evidence whatever to suggest that Godfrey was anything other than he claimed to be, an agent in the employ of the FBI. ▪ Thus while reaffirming the general rule delineating the province of judge and jury in these matters, we nevertheless conclude that the defendant's denial of any connection with the crime does not *ipso facto* create a disputed fact situation within the meaning of the rule if the evidence in regard to the witness' connection with the crime is otherwise uncontradicted.

▪ Similarly where, as here, the defendant contends that such a dispute arises from inferences to be drawn from the witness' testimony, more must be shown than that the witness was present at the scene and acted in a manner consistent with his undercover capacity. If, for example, Godfrey had admitted prior knowledge of defendant's intent to shoot, but asserted that complicity was feigned in order either to protect his cover or to eventually apprehend and prosecute the defendant, we would be faced with an entirely different problem. In that situation the question would be whether the witness' admitted complicity was feigned or real.

Yet even in the foregoing context trial court rulings that a police agent was a feigned accomplice as a matter of law have been affirmed. (*People v. Salazar* (1962) 201 Cal.App.2d 284 [20 Cal.Rptr. 25] (buying narcotics to obtain evidence of selling); *People v. Kennedy* (1944) 66 Cal.App.2d 522 [152 P.2d 513] (placing bet to obtain evidence of bookmaking); *People v. Lombard* (1933) 131 Cal.App. 525, 530-531 [21 P.2d 955] (driving car used in attempted kidnaping); *People v. Wardwell* (1959) 167 Cal.App.2d 560, 566 [334 P.2d 641] (participation in narcotics purchases).) Defendant asserts that in all these instances the police agent was acting under an express assignment to obtain evidence of the very offense in which his complicity was questioned; in the instant case, it is urged, Godfrey had no specific assignment to participate in the shooting at the Bohmer residence, and hence the issue' of whether Godfrey's complicity was feigned should have been submitted to the jury. (*People v.*

*Griffin* (1950) 98 Cal.App.2d 1, 22-23 [219 P.2d 519]; *People* v. *Spaulding* (1927) 81 Cal.App. 615 [254 P. 614]; *People* v. *Bolanger* (1886) 71 Cal. 17 [11 P. 799].)

As noted above, however, this argument disregards the fundamental difference between the present case and those involving so-called feigned accomplices. The trial judge in this case did not decide as a matter of law that Godfrey was a feigned accomplice; he determined there was no evidence in the record to support an inference that Godfrey was any kind of accomplice in fact.[5] In response to a defense motion on this issue the court stated, "there is no evidence in the case so far that Mr. Godfrey is either an accomplice or an accessory. The evidence is all to the contrary. The facts, as indicated by the district attorney, is [*sic*] that he was surprised, did not go there for that purpose, told Mr. Hoover to stop, and surrendered the weapon the next day and made a prompt report." Thus we are presented with the classic case of the rule that if there are no facts in the record to support a suggested inference, there is simply no issue to be presented to the jury. As stated in *People* v. *Cisneros* (1973) *supra,* 34 Cal.App.3d 399, 415, "The combination of furnishing of the gun and the driving away, in the absence of further evidence showing an intent to enter into a common undertaking to shoot Welch, is also insufficient to create the liability for prosecution necessary to make Harris an accomplice. In short, there were no facts sufficient to take the accomplice issue to the jury."[6]

 Where, however, there exist facts giving rise to an evidentiary dispute, we have been strict in directing that accomplice instructions be given even in the absence of a defense request. Thus in *People* v.

---

[5]Defendant cites the case of *People* v. *Brocklehurst* (1971) *supra,* 14 Cal.App.3d 473, for the proposition that in general intent crimes (such as § 246 here) an officer must be declared an accomplice as a matter of law and cannot interpose a claim of feigned complicity. *Brocklehurst* is inapposite for a number of reasons. While the validity of that decision is not before us, we note that the precise holding was that an officer was an accomplice as a matter of law where he admitted complicity in a general intent crime which required the participation of both the officer and the defendant. (There, a violation of Pen. Code, § 288a.) Stated another way, in such a case the officer could not claim he was a feigned accomplice, and thus corroboration was necessary. Here, however, we have neither admitted complicity, a claim of feigned complicity, nor a general intent crime requiring the participation of two persons.

[6]*People* v. *Keel* (1928) 91 Cal.App. 599 [267 P. 161], relied upon by defendant, is not helpful. Although the defendant there denied the killing, he did not deny being present at the altercation. Thus the court properly held that a self-defense instruction was required. Similarly in *People* v. *Perez* (1965) 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934], we held that a defendant may deny every element of a crime and still be entitled to an entrapment instruction as to "such acts as he did commit." Here, of course, this defendant insisted he was not present and thus committed no acts.

*Gordon* (1973) *supra,* 10 Cal.3d 460, we required *sua sponte* instructions even though the witness had been acquitted of the same murder for which the defendant was on trial. In that case, however, the defendant continued to assert that the witness planned the murder, provided the defendant access to the premises on the night of the incident, and had done the actual shooting. (See also *People* v. *Bevins* (1960) 54 Cal.2d 71 [4 Cal.Rptr. 504, 351 P.2d 776].)[7]

The distinctions between *Gordon* and the instant case are plain. There the culpability of the alleged accomplice was a principal defense contention, here no evidence was presented on that issue. Indeed, even defendant's evidence pointed to the conclusion that Godfrey was a legitimate agent: defendant testified that he joined the SAO only as a favor to Jerry Lynn Davis in order to "keep an eye on" Godfrey, and further that he had "doubts" about Godfrey because he did not seem to have any ideological basis for his professed SAO beliefs. This testimony supported the inference that Godfrey's pretended association with the SAO was visible to a degree even to legitimate members of the organization.

█ For the reasons stated, we hold there was no error in the court's refusal to give the proffered instructions. █ In so concluding we do not retreat from our traditional position, reiterated in *Gordon,* of demanding strict adherence to the requirement of accomplice instructions when there is a genuine evidentiary conflict. █ But where, as here, the only evidence connecting the witness to the crime was his presence at the scene and his conduct consistent with general undercover police purposes, no reason emerges to declare the court mistaken in finding as a matter of law that Godfrey was not an accomplice.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Burke, J.,* concurred.

Appellant's petition for a rehearing was denied December 26, 1974.

---

[7]The converse of *Gordon* is equally true: even where the witness is charged jointly with the defendant, this fact does not as a matter of law make him an accomplice where there is a dispute as to his complicity. (*People* v. *Morgan* (1948) 87 Cal. App.2d 674 [197 P.2d 413]; *People* v. *Lawson* (1952) 114 Cal.App.2d 217 [249 P.2d 850].)

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.