Filed 12/23/13

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

    Plaintiff and Appellant,

S207250

    v.

Ct. App. E054422

PAUL ANTOINE BIANE et al.,

San Bernardino County

    Defendants and Respondents.

Super. Ct. No. FSB1102102

_____

MARK KIRK,

    Petitioner,

    v.

THE SUPERIOR COURT OF
SAN BERNARDINO COUNTY,

Ct. App. E054735

    Respondent;

THE PEOPLE,

    Real Party in Interest.

_____

JAMES ERWIN,

    Petitioner,

    v.

THE SUPERIOR COURT OF
SAN BERNARDINO COUNTY,

Ct. App. E054737

    Respondent;

1

THE PEOPLE,

   Real Party in Interest.

JEFFREY BURUM,

   Petitioner,

   v.

THE SUPERIOR COURT OF
SAN BERNARDINO COUNTY,

   Respondent;

THE PEOPLE,

   Real Party in Interest.

Ct. App. E054738

An indictment charged defendants Jeffrey Burum and James Erwin with aiding and abetting the receipt of bribes by members of the San Bernardino County Board of Supervisors and with conspiring with those supervisors and others to have them accept bribes in exchange for the supervisors' approval of a $102 million payment to settle litigation between Burum's company and the County. The People intended to prove that Burum (the payor of the bribes) and Erwin (acting as Burum's agent) used threats, intimidation, and coercion to encourage the supervisors to accept the illegal payments. The Court of Appeal sustained Burum's demurrer to four counts of bribery and the related target crimes charged as part of the conspiracy on the ground that the payor of a bribe, *as a matter of law*, cannot aid and abet the receipt of the same bribe or conspire to commit that offense. The Court of Appeal sustained Erwin's demurrer to two of the bribery charges and the related target crimes charged as part of the conspiracy on the ground that Erwin, as Burum's agent, "would stand in defendant Burum's shoes."

2

We conclude that the Court of Appeal erred. Although neither the offer nor payment of a bribe in itself can establish that the offeror aided and abetted the separate crime of receiving the same bribe, the status of being the offeror or payor of a bribe does not disqualify that person, as a matter of law, from complicity in the offense of receiving the bribe. Whether the offeror is guilty of aiding and abetting the receipt of the bribe depends on whether there is evidence that, in addition to the offer or payment of the bribe, the offeror " 'with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' " (*People v. Gonzales and Solis* (2011) 52 Cal.4th 254, 295-296.) Similarly, being the offeror or payor of a bribe does not disqualify that person, as a matter of law, from culpability for participating in a conspiracy to accept that same bribe.

Because the Court of Appeal sustained the demurrer based on its incorrect understanding of the law, we reverse that part of the judgment of the Court of Appeal and remand for further proceedings.

## BACKGROUND

On May 9, 2011, a grand jury issued a 29-count indictment against Paul Biane, a member of the San Bernardino County Board of Supervisors; Mark Kirk, chief of staff for a different member of the Board of Supervisors; defendant Jeffrey Burum, a general partner in Colonies Partners, L.P. (Colonies); and defendant James Erwin, who was an agent for Burum. The indictment alleged that these individuals conspired together with William Postmus, who was the Chairman of the Board of Supervisors and who has already pleaded guilty and agreed to aid the prosecution, to settle a lawsuit brought by Colonies against San Bernardino County (County) on terms favorable to Colonies in exchange for a contribution of $100,000 each to political action committees controlled by Biane, Kirk, Erwin, and Postmus. Among other charges, the indictment accused Burum and Erwin of conspiracy to accept bribes to influence the vote of a public official (Pen.

3

Code, §§ 86, 165), to misappropriate public funds (Pen. Code, § 424), to commit a criminal conflict of interest (Gov. Code, § 1090), and to improperly influence a legislative action (Gov. Code, § 9054) (count 1; Pen. Code, § 182, subd. (a)(1)), and of aiding and abetting the acceptance of bribes by Postmus and Biane (counts 4, 5, 7, and 8; Pen. Code, §§ 86, 165).

According to the indictment, Colonies is the owner of a 434-acre parcel of land in Upland that was intended for residential and commercial development. The parcel includes a 67-acre flood control basin over which the County had asserted easement rights. Colonies spent $23.5 million on flood control improvements and requested that the County reimburse those costs. When the County declined, asserting that the 67-acre basin itself was sufficient for flood control without improvements, Colonies sued the County in March 2002, challenging the County's easements and claiming that it had been deprived of its ability to develop the flood control basin. In July 2005, the Court of Appeal ruled in favor of the County as to 30 acres of the easement established in 1933 but found issues of fact remained as to the applicability and extent of a 1939 easement.

The indictment alleges that Burum, on behalf of Colonies, then concocted a scheme to obtain a settlement of this litigation "through corrupt means": a combination of threats, extortion, bribery, and inducements to secure votes for a favorable termination of the litigation from the five-member Board of Supervisors. Burum's agent, Erwin, conspired with Burum and conveyed threats and inducements from Burum to Postmus and Biane, who were members of the Board of Supervisors, and to Kirk, who was chief of staff to Gary Ovitt, a member of the Board of Supervisors. Erwin agreed to accept money from Burum in exchange for influencing the votes of Postmus and Biane. Kirk agreed to accept money in exchange for influencing Ovitt's vote. Postmus and Biane joined the conspiracy by agreeing to accept the bribes.

The indictment recites that Postmus, after being provided cash, meals, and entertainment of various kinds by Burum during a trade mission to China, announced to

4

the County's administrative officer on September 20, 2005, "We've got to settle this Colonies thing"; that Burum offered money to Erwin to assist in obtaining votes for the settlement; that Burum offered money to Kirk if he could deliver Ovitt's vote for the settlement; that Burum offered money to Biane in exchange for a favorable settlement from the County; and that Burum campaigned against Measure P (a ballot measure to increase the salary of the members of the Board of Supervisors) as a means of exerting pressure on Biane. Erwin told Postmus's staff that Burum had hired private investigators to sift through the board chair's trash for incriminating information, and threatened to distribute mailers to voters claiming that Postmus was addicted to drugs, as a means of pressuring him to secure Biane's vote. As a means of pressuring Biane directly, Erwin created mailers related to the Measure P campaign asserting that Biane was in debt and unable to pay his bills.

In October or November of 2006, Burum and Postmus discussed the prospect of a settlement at the Doubletree Hotel in Ontario, using Erwin as an intermediary. During one meeting, Burum had a courier deliver "hit piece" mailers relating to Measure P in an effort to intimidate Postmus. Postmus and Biane eventually agreed to vote to approve a settlement favorable to Colonies in exchange for a bribe. Kirk agreed, in exchange for a bribe, to urge Ovitt to support the settlement.

On November 28, 2006, over the objections of San Bernardino County Counsel as well as private attorneys retained by the County, Postmus, Biane, and Ovitt provided the necessary three votes on the five-member board of supervisors to approve a $102 million settlement with Colonies. In the months following the County's initial payment of $22 million to Colonies, Colonies made three separate payments of $100,000 each to political action committees controlled, secretly or otherwise, by Biane, Kirk, and Erwin, and two payments of $50,000 each to political action committees secretly controlled by Postmus. Each of these conspirators funneled money from the committees for his own personal benefit. Biane, Kirk, and Erwin failed to report these payments on their Fair Political

5

Practices Commission Statement of Economic Interest Forms or on their income tax returns.

Burum and Erwin demurred to all of the counts against them on the grounds that the facts alleged did not state a public offense or would constitute a legal justification or excuse or other legal bar to the prosecution. The trial court sustained the demurrers in part. As relevant here, the trial court, in reliance on *People v. Wolden* (1967) 255 Cal.App.2d 798 (*Wolden*), ruled as a matter of law that the offeror of a bribe (Burum) could not be an accomplice of or coconspirator with the recipient of the bribe. The trial court thus sustained Burum's demurrer as to counts 4, 5, 7, and 8 as well as to those parts of the charge of conspiracy (count 1) with Postmus, Biane, Erwin, and Kirk relating to those target crimes, but overruled the demurrer "as it applies to allegations of conspiracy with persons other than the recipients of the bribes." The trial court reasoned, on the other hand, that *Wolden* did not apply to Erwin, who was accused merely of being an intermediary, not the offeror of the bribe; the trial court thus overruled Erwin's demurrer as to all of those counts.

The People appealed the trial court's ruling sustaining Burum's demurrer in part. Burum and Erwin filed petitions for writ of mandate/prohibition challenging the trial court's decision to the extent it overruled their demurrers. The Court of Appeal consolidated the petitions with the appeal and issued an opinion. The Court of Appeal affirmed the trial court's order sustaining Burum's demurrer as to counts 4, 5, 7, and 8. The appellate court then affirmed the order overruling Erwin's demurrer as to counts 4 and 7, but reversed the trial court's order overruling Erwin's demurrer as to counts 5 and 8. In the view of the Court of Appeal, the allegations in the indictment were sufficient to suggest that Erwin was an agent of Postmus, a bribe receiver, in counts 4 and 7, but counts 5 and 8 alleged that Erwin "acted only as an agent of the bribe giver" with respect to Biane. Finally, the Court of Appeal ordered the demurrers sustained as to count 1 to

6

the extent the conspiracy charge relied on target crimes for which the demurrer had been sustained.

We granted the People's petition for review.

**DISCUSSION**

A demurrer is not a proper means of testing the sufficiency of the *evidence* supporting an accusatory pleading. (*People v. Williams* (1979) 97 Cal.App.3d 382, 391 & fn. 5.) Rather, a demurrer lies only to challenge the sufficiency of the *pleading*. It is limited to those defects appearing on the face of the accusatory pleading, and raises only issues of law. (Pen. Code, § 1004; *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1090.) " 'The [accusatory pleading] must be given a reasonable interpretation and read as a whole with its parts considered in their context.' " (*People v. Keating* (1993) 21 Cal.App.4th 145, 150-151.) On appeal from a judgment entered on demurrer, the allegations of the accusatory pleading must be liberally construed and assumed to be true. (*Ibid*.)

The legal grounds for demurrer to an accusatory pleading are limited to those specifically enumerated in Penal Code section 1004. (*People v. Tibbitts* (1925) 71 Cal.App. 709, 712; see also 4 Witkin and Epstein, Cal. Criminal Law (4th ed. 2012) Pretrial Proceedings, § 279, p. 548.) Failure to assert one of the enumerated grounds, other than an objection to the jurisdiction of the court or that the facts stated do not constitute a public offense, "shall be deemed a waiver thereof." (Pen. Code, § 1012.)

Burum and Erwin have challenged the indictment on the ground the allegations "do not constitute a public offense" or contain assertions that "constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution." (Pen. Code, § 1004, subds. 4, 5.)

7

**A. Whether the Offeror of a Bribe May be Charged with Aiding and Abetting the Person Accepting the Bribe**

The Court of Appeal held that neither Burum (the offeror of the bribes) nor Erwin (Burum's agent) could be charged with aiding or abetting the receipt of the bribes. Its conclusion rested on the theory that the offeror of a bribe cannot "as a matter of law" aid and abet another person in receiving the bribe. The Court of Appeal was mistaken. Whether the offeror of a bribe may be charged with aiding and abetting another in the crime of receiving the bribe depends on whether the offeror's conduct, beyond merely offering or paying a bribe, satisfies the elements of aiding and abetting the receipt of the bribe.

Our discussion of the interplay between the statutes defining bribery and the statutes defining principals in a crime begins with *People v. Coffey* (1911) 161 Cal. 433 (*Coffey*). Michael Coffey, a member of the San Francisco Board of Supervisors, was convicted of receiving a bribe, principally upon the testimony of a fellow supervisor who acted as an intermediary for Abraham Ruef in communicating the offer of the bribe and in delivering the promised money. (*Id*. at pp. 436-437.) The question before us was whether this prosecution witness needed to be corroborated as "an accomplice of Coffey in the corrupt agreement thus charged and proved." (*Id*. at p. 437.) Although Penal Code section 1111, then as now, declared that a conviction could not be had upon the uncorroborated testimony of an "accomplice," the Legislature had not yet defined the word. (*Coffey*, *supra*, at p. 438.) Accordingly, we were forced to articulate a definition of "accomplice." Our definition encompassed, but was not limited by, the definition of a principal in Penal Code section 31,[1] since (as we noted) "[a]t common law the

---

[1]     Penal Code section 31, then as now, provided that "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed."

8

accomplice could not be indicted for the same crime, yet he was none the less an accomplice." (*Coffey*, *supra*, at p. 441.) Indeed, we rejected as the "commonest" of errors the contention that "an accomplice is one who may be indicted for the same crime as that charged against the person on trial, and therefore *if he cannot be charged with the same crime he is not an accomplice*." (*Id*. at p. 440, italics added.) Observing that "the fallacy of the reasoning must be obvious," we declared instead that "[o]ne is an accomplice in a crime because of the part he has taken in it, not because he may be indicted as a principal. The latter is a mere accidental circumstance, depending upon the language of the statute, and in no way affecting the true touchstone—namely, the part which the witness has taken in the offense. The judicial declaration that, under a statute such as our section 31 of the Penal Code, all accomplices may be indicted as principals, is perfectly sound. But the attempted reasoning from this that if a person cannot be indicted as a principal, he is, therefore, not an accomplice, is absolutely fallacious." (*Id*. at pp. 440-441.)

*Coffey* thus defined "accomplice" to encompass not only those who were principals in the crime under Penal Code section 31, but also those who would have been deemed principals but for the fact that "the law has denounced as a separate crime *the particular act* of participation" and has thereby "effect[ed] a modification of section 31." (*Coffey*, *supra*, 161 Cal. at p. 443, italics added.) In other words, "[i]f the law made manifest its intent that he should not be so indicted as a principal, it would be but an exception to the general provision of section 31. If it did not make manifest this intent, then the situation presented is that contemplated by section 654 of the Penal Code, where the act is made punishable in different ways by different provisions of the code. But in either case the accidental circumstances clearly do not affect the definition of an accomplice" for purposes of Penal Code section 1111. (*Coffey*, *supra*, 161 Cal. at p. 443.)

Four years later, the Legislature amended Penal Code section 1111 to repudiate *Coffey* to the extent it had enlarged the definition of "accomplice" beyond that provided in Penal Code section 31: "An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Stats.1915, ch. 457, § 1, p. 760; see *People v. Clapp* (1944) 24 Cal.2d 835, 838 (*Clapp*).)  The Legislature, however, did not purport to disavow *Coffey*'s construction of section 31.  Indeed, as a result of the 1915 amendment, the definition of an accomplice was made congruent with the definition of a principal under section 31.  (*People v. Hoover* (1974) 12 Cal.3d 875, 879.)

The parties thus agree that, as a result of the 1915 amendment, the offeror of a bribe and the receiver of the bribe are no longer deemed accomplices as a matter of law.  But defendants would carry the argument further.  In their view, a bribe offeror and bribe receiver, as a matter of law, can *never* be accomplices.  They rely on *Clapp*, *supra*, 24 Cal.2d 835.

*Clapp* considered whether a woman who submitted to an illegal abortion was an accomplice of the defendant doctor who performed the abortion.  Noting that the performance of an abortion was then outlawed by Penal Code section 274 and the solicitation of or submission to an abortion was then outlawed by Penal Code section 275, we held that the existence of "section 275 of the Penal Code prescribing punishment for a woman who submits to an illegal operation precludes the application of section 31 of the Penal Code under which she would be punishable as principal for the crime of abortion," where "section 275 . . . cover[ed] all acts committed by [the woman] in connection with the abortion." (*Clapp*, *supra*, 24 Cal.2d at p. 839.)  We stated the general rule thus:  "If a statutory provision so defines a crime that the participation of two or more persons is necessary for its commission, but prescribes punishment for the acts of certain participants only, and another statutory provision prescribes punishment for the acts of certain participants not subject to the first provision, it is clear that the latter are

10

criminally liable only under the specific provision relating to their participation in the criminal transaction. The specific provision making the acts of participation in the transaction a separate offense supersedes the general provision in section 31 of the Penal Code that *such acts* subject the participant in the crime of the accused to prosecution for its commission." (*Clapp*, *supra*, 24 Cal.2d p. 838, italics added.) As examples, we asserted that "the giver and receiver of a bribe" and "the perjurer and suborner" were "no longer accomplices under section 1111." (*Id.* at p. 839.)

The scope of our ruling in *Clapp*, though, ought not be overstated. *Clapp* had no occasion to consider whether a person who solicits or submits to an illegal operation could *ever* be an accomplice of the physician performing the operation. Rather, we said that the mere solicitation of or submission to the illegal operation, which was already criminalized by a separate provision, could not in itself establish that the person aided and abetted the performance of the illegal operation. Similarly, we observed that "the giver and receiver of a bribe"—simply by virtue of having given or received the bribe— "are no longer accomplices under section 1111." (*Clapp*, *supra*, 24 Cal.2d at p. 839; see also *People v. Davis* (1930) 210 Cal. 540, 557 ["the giver and receiver of a bribe are no longer accomplices one to the other"].) Moreover, *Clapp* did not purport to repudiate the part of *Coffey* that declared that the exception to Penal Code section 31 arises only where "the law has denounced as a separate crime *the particular act* of participation by an accessory or accomplice." (*Coffey*, *supra*, 161 Cal. at p. 443, italics added.) Indeed, neither *Coffey* nor *Clapp* suggested that anyone committing "the particular act" criminalized by another statute would be exempted from aiding and abetting liability *regardless* of what other acts that person committed. (Cf. *People v. Davis*, *supra*, 210 Cal. at p. 557 ["We can see no impossibility, legal or otherwise, in a person acting as the agent or accomplice of both the bribe giver and the bribe receiver. Each case, of course, must turn on its own facts and circumstances . . . ."].) Accordingly, outside of the

11

specific context presented in *Clapp*, our case law has indicated that aider and abettor liability turns on the particulars of each crime participant's actual conduct.

In *People v. Wayne* (1953) 41 Cal.2d 814 (*Wayne*), overruled on other grounds in *People v. Snyder* (1958) 50 Cal.2d 190, 197, we analyzed whether the trial court erred in instructing the jury that Joseph May, the person solicited to offer a bribe to police officers, could not be an accomplice of the defendant Willard Wayne, who was charged under Penal Code section 653f with soliciting May to pay a bribe to police officers. We explained that "if the evidence showed only that defendant solicited such person and nothing more," the person solicited would not be an accomplice. (*Wayne*, *supra*, 41 Cal.2d at p. 825.) In *Wayne*, however, the prosecution evidence showed "much more than that; May [the person solicited] was not merely a participant in the criminal scheme but the instigator of such scheme. . . . May first solicited Wayne in general terms and thereafter Wayne solicited May to join in the bribe on specific terms," forming "two criminal solicitations . . . . May, by his original solicitation of Wayne, *together with his ensuing conduct*, encouraged and abetted Wayne's subsequent more specific solicitation and thus became a principal in the latter crime under the provisions of section 31 of the Penal Code . . . ." (*Ibid*., italics added.) Accordingly, May, despite being the person solicited to offer a bribe, could have been found to be an accomplice to the charge of solicitation "not because he solicited himself but because he actively encouraged and abetted defendant to solicit him." (*Id*. at p. 826.) The fact that May was the person solicited to offer a bribe did not disqualify him as a matter of law from being an accomplice of the defendant who had solicited him. (*Ibid*.)

We deemed the situation in *Wayne* to be "similar" (*Wayne*, *supra*, 41 Cal.2d at p. 825) to that in *People v. Wallin* (1948) 32 Cal.2d 803 (*Wallin*), where we found, in the unusual circumstances presented there, that a murderer could be additionally charged as an accessory to the murder she had committed. In the latter case, the defendant Morton Wallin was charged with being an accessory to murder by aiding Jeanette Paz, the

12

murderer, in disposing of the body. Wallin contended that the jury should have been instructed that the testimony of Paz, the main prosecution witness, required corroboration under Penal Code section 1111. We reasoned that the fact Paz was the murderer did not automatically disqualify her from being an accessory after the fact to her crime (and thus an accomplice of Wallin): "It may be that a murderer who acts alone in concealing her crime cannot be separately charged as an accessory, but it does not follow that she cannot become liable as such if she encourages another to aid her in avoiding arrest and punishment." (*Wallin*, *supra*, 32 Cal.2d at p. 806.) Indeed, the record showed that Paz, after the murder, committed "additional acts in encouraging and aiding defendant to commit the offense charged against him." (*Id.* at p. 809.) Accordingly, we held that "we should not refuse to treat one who has committed a murder as an accomplice of one who aided her in concealing the crime merely because it is unlikely that a murderer would ever be charged as an accessory." (*Ibid.*)

Yet another "analogous" situation (*Wallin*, *supra*, 32 Cal.2d at p. 807) was presented in *People v. Lima* (1944) 25 Cal.2d 573, where the defendant Lima was charged with receiving stolen property, and the thieves testified there was a prearranged plan for them to steal the goods and for Lima to receive them. Although we deemed it "settled" that "the thief and the receiver of stolen property are not accomplices" (*id.* at p. 576; but see now Pen. Code, § 496, subd. (a)), we held that the rule applied only where "the receiver usually has no part in the theft, directly or indirectly, and the criminal act of knowingly receiving stolen property occurs independently thereof and at a time subsequent to the completion of the asportation." (*Lima*, *supra*, at p. 576.) We reasoned that the limitation on Penal Code section 31 discussed in *Clapp* did not apply "[w]here, as here, the prosecution evidence discloses the existence of a conspiracy or agreement whereby the principal prosecution witnesses were to steal and defendant was to purchase the stolen property." (*Lima*, *supra*, at p. 578.)

13

Case law from the Court of Appeal confirms that the *Clapp* exception to Penal Code section 31 arises when an individual might otherwise be deemed to be an active offender in the commission of one crime and an accomplice in the commission of another crime "at the same time and *through the same overt acts*," such that the bribe offeror and the bribe receiver "would be interchangeably guilty as accomplices, when the offer was accepted and the bribe received."  (*People v. Bunkers* (1905) 2 Cal.App. 197, 204, italics added.)

*People v. Grayson* (1948) 83 Cal.App.2d 516, for example, considered "whether one who places a bet on a horse race is an accomplice of one who receives, holds, or forwards the bet," given that a separate subdivision of the same statute "makes the placing of a bet a separate offense."  (*Id*. at p. 518.)  The Court of Appeal's conclusion that the witness was not an accomplice did not purport to make a ruling as a matter of law; rather, the court asserted that "the acts of [the witness], *according to the evidence*, were only those which constituted a violation of this subdivision [criminalizing the placing of a bet]. . . .  [S]ince the act of placing a bet, without which, of course, the bet could not be received by another, was punishable as a separate offense . . . , *it* was not punishable under [Penal Code] section 31, and [the witness] was not an accomplice of appellant who received the bet."  (*Id*. at pp. 518-519, italics added; see also *People v. Bennett* (1955) 132 Cal.App.2d 569, 581 [those who were solicited for bribes in order to obtain liquor licenses were not accomplices in the crime of asking or receiving bribes by a public officer "[u]nder these circumstances"]; *People v. Powell* (1920) 50 Cal.App. 436, 443 [the bribe giver was not an accomplice in the crime of asking for a bribe "[u]nder these circumstances," but "could be convicted as an aider and abettor in the crime of receiving a bribe"]; cf. *People v. Skaggs* (1947) 80 Cal.App.2d 83, 95 ["Under some situations, it is conceivable that under the provisions of sections 67 or 68 of the Penal Code the bribe seeker could be the accomplice of the bribe giver, but the evidence in the instant case if believed, presents no such problem"]; *People v. Brigham* (1945) 72

14

Cal.App.2d 1, 7 ["the bribe seeker could be the accomplice of the bribe giver or vice versa but, by reason of the evidence in the within action, no such problem is presented"].) Each of these cases recognized that aiding and abetting liability depended on consideration of the individual's conduct in full and not simply on whether a particular act was criminalized by another statute.

The same was true in *People v. Bunkers*, *supra*, 2 Cal.App. 197, and in *People v. Lips* (1922) 59 Cal.App. 381, on which defendants especially rely.

Bunkers, a state senator, was convicted of asking for and receiving a bribe in exchange for quashing a legislative investigation into the affairs of a building and loan association. In response to Bunkers's contention that officers of the association were accomplices, the Court of Appeal carefully reviewed the evidence and found no indication that any of them had aided or abetted the crime with which Bunkers was charged: "[N]either of them ever conversed with appellant[;] they . . . did not, directly, advise or encourage him to ask for or receive a bribe. [¶] There is no evidence tending to show that any of them suggested to [appellant's accomplice] that appellant be advised or encouraged to commit this offense. The only possible theory upon which it could be said that any of them aided or abetted, or encouraged its commission, is that they, or some of them, assisted in procuring the money and in giving it to [the accomplice]. . . . As the only acts of these witnesses which could by possibility render them liable as principals under section 31 of the Penal Code constitute a separate and distinct offense under section 85, cardinal rules of construction forbid an interpretation which would also make them accessories before the fact, or principals, in the commission of the other offense defined in section 86 of the same code." (*People v. Bunkers*, *supra*, 2 Cal.App. at pp. 203-204.)

Lips, a deputy sheriff, was convicted of asking for and receiving a bribe from a fugitive and his wife so that the fugitive could evade prosecution in Texas. Lips asserted that the fugitive's wife, Dede Furay, was an accomplice in the crime of asking for and

15

receiving a bribe.  The Court of Appeal rejected the contention as unsupported by the trial record:  "[G]ranting that Mrs. Furay was a party to the agreement" made by Lips and a fellow deputy sheriff to allow her husband to evade prosecution in exchange for money, "Mrs. Furay was in no way concerned with the officers in either asking, receiving or agreeing to receive the bribe.  She was on the opposite end of the transaction."  (*People v. Lips*, *supra*, 59 Cal.App. at p. 385.)

Other jurisdictions likewise recognize that aiding and abetting liability in such circumstances depends on the individual's actual conduct.  In *People v. White* (Mich.Ct.App. 1985) 383 N.W.2d 597, the defendant mayor, Harry White, was charged with aiding and abetting the offering of a bribe to a public official—himself.  In reversing the order dismissing the indictment, the Michigan Supreme Court reasoned that the defendant's liability for aiding and abetting this crime would depend on whether the "evidence at trial" showed that the defendant "supported and encouraged by words or deeds the [specified] persons to give a bribe," not on whether the defendant had received the bribe.  (*Id*. at pp. 600, 601.)  Indeed, the court acknowledged that "[t]he recipient of a bribe may act passively and simply accept the gratuity without having participated actively in the conspiracy to give a bribe or in the crime of arranging for the giving of the bribe.  However, where the recipient actively participates with those who give the bribe, he is chargeable as an aider and abettor in the crime of giving the bribe.  We are aware of no Michigan authority which would per se preclude prosecution for aiding and abetting the giving of a bribe merely because the accused is the recipient of the bribe.  Nor has defendant presented any persuasive reason for fashioning such a rule."  (*Id*. at p. 600; accord, *United States v. Kenner* (2d Cir. 1965) 354 F.2d 780, 785 ["a payor of a bribe can be an aider and abettor" of a federal officer in accepting unlawful compensation]; *United States v. Di Girolamo* (N.D.Cal. 1992) 808 F.Supp. 1445, 1449 [citing *Kenner*]; *United States v. Michael* (D.N.J. 1978) 456 F.Supp. 335, 349-351 [interpreting federal and New Jersey law]; cf. *Gebardi v. United States* (1932) 287 U.S. 112, 118-119 [where the

16

woman's conduct "is more active than mere agreement on her part to the transportation" for illicit purposes and where she is "the active or moving spirit in conceiving or carrying out the transportation," she can be an accomplice under the Mann Act (see now 18 U.S.C. § 2421)]; *United States v. Spitler* (4th Cir. 1986) 800 F.2d 1267, 1278-1279 [alleged victim of extortion scheme had "a 'far more active role' " than " 'the mere payment of money,' " and thus could be charged with "aiding and abetting extortion and conspiracy to commit extortion" (fn. omitted)].)

The same is true here. The allegation that Burum offered a bribe, even if proved, cannot alone establish that he aided and abetted the receipt of the bribe. Neither, however, does it categorically exempt him from being charged with aiding and abetting the receipt of the bribe if he engaged in *additional* conduct to aid, promote, encourage, or instigate the commission of that crime, with knowledge of the bribe recipient's unlawful purpose and with the intent or purpose of committing, encouraging, or facilitating the commission of the recipient's offense. In this case, the People contend that defendants used threats, intimidation, and coercion to ensure the receipt of the bribes. (See Pen. Code, § 31 ["principals" in a crime include those "who, by threats, menaces, command, or coercion, compel another to commit any crime"].) Burum's liability for aiding and abetting the crime of receiving a bribe under both section 165 (counts 4 and 5) and section 86 (counts 7 and 8) thus would depend on whether, in addition to offering or giving Biane or Postmus a bribe, the evidence shows that Burum also used threats, intimidation, or coercion to aid, promote, encourage or instigate others to accept the alleged bribes.

The only case offered to the contrary is *Wolden*, *supra*, 255 Cal.App.2d 798, which (according to defendants) held that an alleged bribe giver cannot, "as a matter of law," be charged with aiding and abetting the receipt of those bribes. But *Wolden* did not so hold. In that case, defendant Wolden, the tax assessor of the City and County of San Francisco, was convicted of accepting bribes to reduce assessments on personal property.

17

Wolden argued that several of the prosecution's witnesses were accomplices and that the trial court erred in instructing the jury otherwise. As to two of those witnesses, the evidence showed only that each "paid his own funds and each sought a personal benefit from the official action sought to be induced by the gift" and thus could not have been accomplices. (*Id*. at pp. 804-805.) The evidence concerning a third witness, Skelly, was similar, but there was *also* testimony that Skelly had done so "to aid Wolden." (*Id*. at p. 805.) Accounting for the possibility, however "unlikely," that the jury could thereby have inferred that Skelly was "defendant's accomplice" in the crime of accepting bribes, the Court of Appeal found that "the removal of the issue from the jury was not prejudicial," since "Skelly was essentially a defense witness." (*Ibid*.) By parsing the record so carefully, it is plain that *Wolden* did not purport to decide the issue of complicity as a matter of law, but (rather) recognized that the person giving a bribe could, depending on the evidence, be deemed an accomplice of the person accepting the bribe.

Because the Court of Appeal sustained Burum's demurrer to counts 4, 5, 7, and 8 solely on the ground that "the person who gives or offers a bribe cannot, as a matter of law, aid and abet the person who receives the bribe"—and we have determined that this ground was erroneous—we shall reverse the order sustaining the demurrer and remand the matter to the Court of Appeal to consider, in the first instance, Burum's remaining grounds for demurrer.

The Court of Appeal sustained Erwin's demurrer as to counts 5 and 8 on the ground that the indictment alleged that Erwin "acted only as an agent of the bribe giver, defendant Burum, in persuading defendant Biane to accept a bribe." Having found that Burum could not, as a matter of law, be charged with bribing Biane, the Court of Appeal ruled that "defendant Erwin, as an agent only of defendant Burum, the bribe giver, would stand in defendant Burum's shoes" and be entitled to the same relief. Because the Court of Appeal exempted Burum from liability for aiding and abetting the recipients of the bribe on an erroneous legal ground, it follows that the Court of Appeal's ruling with

18

respect to Erwin, which rested entirely on the ruling with respect to Burum, is similarly vulnerable and must be reversed. The Court of Appeal, on remand, may consider in the first instance Erwin's remaining grounds for demurrer.

**B. Whether the Offeror of a Bribe May Be Charged with Conspiracy to Receive the Bribe**

The Court of Appeal's analysis with respect to the target crimes of bribery in the conspiracy charge was very brief and rested on its erroneous conclusion that defendants, as a matter of law, could not be charged with aiding and abetting the recipients of the bribes. Thus, in the Court of Appeal's view, Burum's demurrer should have been sustained as to the target crimes of bribery in the conspiracy charge "because the crimes defendant Burum allegedly conspired to commit are ones the law states he cannot commit." Similarly, because Erwin could not be charged with aiding and abetting Biane in receiving or accepting bribes in counts 5 and 8, he could not be charged with conspiring to commit those crimes. The sole authority cited was *Wolden*, which declared that the giver and the receiver of a bribe cannot be "guilty of conspiracy, because the two crimes require different motives or purposes." (*Wolden*, *supra*, 255 Cal.App.2d at p. 804.)

This part of *Wolden*, though, suffers from the same infirmity as the argument rejected in the preceding part that the offeror of a bribe can never aid and abet the receipt of a bribe. Although the giver and receiver of a bribe *may* have different intents, it is not required, as a matter of law, that they *must* have different intents. (*People v. White*, *supra*, 383 N.W.2d at p. 601 ["We disagree with defendant's contention that the recipient of a bribe cannot, as a matter of law, have the necessary intent to conspire with others to give a bribe to himself"].) After all, it is well established that an individual may entertain multiple criminal objectives simultaneously. (See generally *People v. Beamon* (1973) 8 Cal.3d 625, 638-639.)

19

Indeed, *Calhoun v. Superior Court* (1955) 46 Cal.2d 18 (*Calhoun*) sustained a charge of conspiracy in closely analogous circumstances. Calhoun, acting on behalf of various wholesale and retail liquor distributors, arranged to use trade association money to donate to the political campaign of a candidate for the Board of Equalization, which issued licenses to sell alcoholic beverages. Although such contributions appeared to be prohibited by Government Code section 5002.6 (see *Calhoun*, *supra*, 46 Cal.2d at pp. 37-38 (dis. opn. of Carter, J.)), Calhoun was alleged instead to have conspired with the candidate and others to solicit and receive political contributions from those who were regulated by the Board of Equalization in violation of Elections Code section 5002.5. Calhoun, like defendants here, argued that donors and recipients of contributions could not conspire to commit the same substantive offense as a matter of law, relying on the opinion of this court in denying a petition for hearing in *People v. Keyes* (1930) 103 Cal.App. 624, 646. (See *Calhoun*, *supra*, 46 Cal.2d at p. 29.) Over the objections of a dissenting justice that "there can be no conspiracy between the donor and the donee" (*id.* at p. 49 (dis. opn. of Carter, J.)) and that a conspiracy requires "there be a *common* unlawful motive" (*id.* at p. 42 (dis. opn. of Carter, J.)), a majority of this court nonetheless permitted the prosecution to go forward. We rested our decision on the particular facts of the case—i.e., evidence presented to the grand jury of "an elaborate conspiracy to utilize contributions from both retail and wholesale liquor licenses to finance [the candidate]'s political campaigns." (*Id.* at p. 30.) In light of that evidence, we reasoned that a trier of fact could have concluded that Calhoun had "a much more intimate participation in [the official]'s campaign than that of one who acted solely as a donor." (*Ibid.*)

Here, as in *Calhoun*, *supra*, 46 Cal.2d at page 30, the indictment alleges that Burum and Erwin participated in a conspiracy that was more elaborate than the mere agreement that a particular bribe be accepted, but involved and depended on the conduct of numerous parties to ensure that at least three supervisors be influenced to approve the

20

$102 million litigation settlement.[2]  The Court of Appeal thus erred in ruling that Burum and Erwin, as a matter of law, could not conspire to commit the target bribery offenses. We therefore reverse the order sustaining the demurrer as to these target crimes in count 1 and remand to the Court of Appeal to consider, in the first instance, defendants' remaining grounds for demurrer.

## DISPOSITION

We express no opinion as to the validity of other defenses asserted by defendants in their demurrers.  We hold only that, at the demurrer stage, the bribery counts and the related portions of the conspiracy count are not barred as a matter of law merely because the indictment alleges that defendant Burum was the offeror of the bribes or that defendant Erwin acted as Burum's agent.  As that was the Court of Appeal's sole basis for its decision, its judgment must be reversed to the extent it affirmed the order of the superior court sustaining the demurrer of defendant Burum to target crimes 1 and 2 of the conspiracy count alleged in count 1 and to the crimes charged in counts 4, 5, 7, and 8, and to the extent it directed the superior court to sustain the demurrer of defendant Erwin to counts 5 and 8 and the related target crimes in count 1.  The matter is remanded to the Court of Appeal for further proceedings consistent with this opinion.

**BAXTER, J.**

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

---

[2]     We need not decide, and therefore do not decide, under what other circumstances the offeror of a bribe may be convicted of conspiracy to commit the crime of receiving a bribe.

21

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Biane
_____

**Unpublished Opinion** NP opn. filed 10/31/12 – 4th Dist., Div. 2
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**


_____

**Opinion No.** S207250
**Date Filed:** December 23, 2013
_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Brian McCarville


_____

**Counsel:**

Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Paul D. Dutton, Steven T. Oetting and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Appellant and for Real Party in Interest.

Law Office of Grech & Firetag, Paul Grech, Jr., and Chad W. Firetag for Petitioner Mark Kirk.

The Law Offices of Rajan R. Maline, Rajan R. Maline; Law Office of Harmon & Harmon and Steven L. Harmon for Petitioner James Erwin.

Arent Fox, Stephen G. Larson, Mary Carter Andrues and Jonathan E. Phillips for Petitioner Jeffrey Burum

David M. Goldstein for Defendants and Respondents.

No appearance for Respondent Superior Court.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Melissa Mandel
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101
(619) 645-2211

Stephen G. Larson
Arent Fox
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
(213) 629-7400