Filed 11/16/22  P. v. Williams CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TYRONE LAVONO WILLIAMS,<br><br>Defendant and Appellant. | F082301<br><br>(Super. Ct. No. VCF395918)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Audrey R. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant sexually assaulted three victims in separate incidents. A jury convicted him of five counts of lewd act upon a child under 14 years of age (Pen. Code, § 288, subd. (a); counts 1, 2, 5, 6, and 7),[1] one count of sodomy upon a child under 14 years of age (§ 286, subd. (c)(1); count 3), and one count of forcible rape (§ 261, subd. (a)(2); count 4). Appellant was also found to have had multiple victims (§ 667.61, subd. (e)(4)), to be a habitual sex offender (§ 667.71), and to have suffered two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), a prior serious felony conviction (§ 667, subd. (a)(1)), and a prior sex offense (§ 667.61, subds. (a) & (d)). He was sentenced to 480 years to life in state prison.

On appeal, appellant contends the information and jury instructions contained an inaccurate date range that included a window of time after one of the victim's 14th birthday, there was insufficient evidence that one of the victims was under the age of 14 at the time of the offenses, the jury never made an express finding that he suffered two prior strikes, and the trial court erred in admitting evidence of his prior convictions pursuant to Evidence Code section 1108. We find no error and affirm.

## BACKGROUND

### I.      Offenses Involving A.A. — Counts 5, 6, and 7.

A.A. was born in August 2001. In 2015, she was living with her mother, her siblings, and her mother's boyfriend. A.A.'s mother's boyfriend's sister was dating appellant and the two of them lived together in the sister's house. A.A. viewed appellant as an uncle figure.

A.A. first met appellant when she was 12 years old and in the seventh grade. At that time, she would go with her mother to appellant's girlfriend's house two to three times per month for large family parties. The parties would generally start inside of the

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

house then move outside.  A.A. would stay in the living room because she was introverted and did not like parties.  Appellant would often join her inside.

Nothing improper happened with appellant until A.A. was 13 years old and in eighth grade.  When she was alone with him in the living room during parties, he began making comments to her about how she was beautiful, and that she should not be depressed.  Later, he began making comments about her body, usually about her legs and thighs.  He would tell her to stand up and then turn around in front of him so that he could look at her.  On several occasions he rubbed her thighs with his hands.

During one party, when A.A. was still 13 years old, appellant took her outside to the front yard.  There were approximately 50 people outside in the back yard playing loud music.  He took her near a car where they were alone in the dark.  He pushed her up against the car so that she was facing the car with her hands on top of it.  He stood behind her, put his hands on top of hers, pushed his body up against her and rubbed his erect penis side to side against her buttocks.  She did not know what to do and started to cry. At some point while appellant was still rubbing against her, the police arrived, apparently in response to the loud music.  Appellant immediately stopped touching her and showed the police to the back of the house.

A.A. described a similar incident that occurred at another party while she was still 13 years old.  Appellant again pushed her up against a car and rubbed his penis against her buttocks.  After this second incident, she stopped attending family parties as often.

The last incident involving appellant occurred when she was walking home from school.  Appellant sent her a text message that he was going to drive her home, then picked her up in his car.  Once she was inside of his car, he touched the inside of her thighs and moved his hands up to where her shorts ended.  While touching her, he asked her if she had ever had sex, and whether she would have sex with someone over the age of 18.  When he dropped her off, he told her to walk on the sidewalk in front of him so he could watch her walk away, and to move her hips side to side.

After the last incident, A.A.'s best friend could tell that something was wrong and told her she should go to the principal's office, which she did. After A.A. reported appellant's conduct, school administrators contacted law enforcement, which responded to the school and commenced an investigation.

## II. Offenses Involving S.Y. — Count 4.

On August 26, 2019, S.Y., an adult female, was released from county jail where she had been incarcerated for a "misdemeanor petty theft warrant." A jail transport dropped her off at the courthouse in Visalia shortly after midnight. She did not have a ride to her home in Porterville or any way to contact friends or family, so she walked with an older lady who had also been on the jail transport to a nearby convenience store.

Appellant approached S.Y. while she was standing in front of the store. She initially thought he seemed nice. He told her he would "protect her until daylight," and bought her cigarettes. He also observed that she was cold and took her to a nearby gym at which he was a member and let her inside so that she could take a hot shower. However, after she finished at the gym, he began making sexual comments and became increasingly threatening, suggesting that she owed him something for helping her.

Appellant escorted S.Y. to a nearby park, forced her to sit down on top of a picnic table, and stood in front of her, blocking her from standing up. S.Y. told him she wanted to go back to the convenience store, but he responded the neighborhood was too dangerous for her to go alone. He then told her she owed him a favor. In an effort to placate him, she gave him a hug and thanked him for the cigarettes. Appellant responded that the hug made his "dick hard," and he grabbed her by the arm and pulled her to a bench in the dugout area of a baseball field. He pulled her onto his lap and told her he wanted her to "grind on him," and pushed her back on forth on his lap. She pleaded with him to stop and to let her go, but he did not. He then pulled down his shorts and her shorts and penetrated her vagina with his penis. She tried to resist by standing up and

pulling her body away from him, but he held her in place. Eventually, a car with its headlights on parked nearby. This seemed to scare appellant, and he pushed S.Y. off his lap.

Appellant walked S.Y. back to the gym and told her he would be back to help her in the morning. S.Y. went into the gym and took another shower and fell asleep.

The next morning, S.Y. walked to the hospital because she wanted to be checked by a doctor. From the hospital, she was taken to a rape crisis center where she received a Sexual Assault Response Team (SART) examination. During the exam, the SART nurse took swabs from her vagina and anus for DNA testing.

The swabs were analyzed by a criminalist from the California Department of Justice. The vaginal swab tested positive for sperm cells. A DNA profile was developed and entered into the Combined DNA Index System (CODIS) database. The database matched the DNA profile to appellant. Officers later obtained a reference sample from appellant, and subsequent analysis confirmed appellant's DNA matched the DNA profile from the vaginal swab.

After receiving the match in the CODIS database, officers created a photographic lineup containing appellant's photograph, and S.Y. identified appellant as the person who attacked her. Officers also obtained records from appellant's account at the gym, which showed he checked into the gym on August 25 and August 26, 2019.

## III.    Offenses Involving A.N. — Counts 1, 2, and 3.

A.N. was born in May 2006. On March 31, 2020, when she was 13 years of age, she snuck out of her house around 11:15 p.m. While walking down the street she was approached by appellant who was riding a bicycle. He asked her what she was doing out this late. She responded that she was "[j]ust walking." A.N. continued walking by herself, but later she encountered appellant again. He told A.N. that someone was looking at her. He then walked with A.N. to a nearby park.

5.

At the park, appellant gave A.N. methamphetamine, which she snorted. He gave her a ride on his bicycle to an apartment complex next to a convenience store, where they sat on a bench and talked. Appellant left briefly, and when he returned, they used more drugs. A.N. and appellant then hugged and kissed, and he touched her on her buttocks and vagina. After she removed some of her clothes, appellant rubbed his penis on the outside of her vagina, but it did not go inside. She then felt appellant put his penis inside of her anus.

Afterward, appellant and A.N. did more drugs together. Appellant left the area, and A.N. fell asleep outside near the apartment complex. At some point before appellant left, he gave A.N. his camouflage hoodie. The next morning, she bought food from the convenience store next to the apartment complex.

A.N. was found by a family member around 10:00 p.m. the next day when she "popped out of the bushes" near a restaurant. A.N. was fidgety and appeared to be intoxicated. Family members took A.N. to the hospital where tests revealed she had methamphetamine in her system.

Approximately two weeks later, A.N. was interviewed by police, and she provided a description of appellant. Based on that description, law enforcement was able to locate appellant, and A.N. identified him in a photographic lineup. When interviewed by police, appellant was shown a photograph of A.N. Appellant stated he recognized A.N. from the night of the assault, but claimed he only told her to go home.

Law enforcement also recovered surveillance video from the convenience store next to the apartment complex. It shows appellant arrive on the night of the assault around 11:00 p.m. on a bicycle wearing a camouflage hoodie. Around noon the next day, the video shows A.N. outside of the convenience store wearing the same camouflage hoodie.

**IV.    Prior Offenses Involving a Prior Victim — Evidence Code Section 1108.**

In 1995 a jury found appellant guilty of four counts of forcible rape in concert (§ 264.1) and two counts of forcible rape (§ 261, subd. (a)(2)).  The trial court granted the People's motion to admit evidence of these offenses pursuant to Evidence Code section 1108.  The prior victim was legally unavailable to testify,[2] so her testimony from the 1995 trial was read for the jury.

In January 1995, the victim was 16 years old.  She was living with a friend and his family in Monterey County.  On January 11, 1995, she ran into appellant while walking to a bus stop.  She had met appellant previously and had been around him on two or three occasions.  She hung around with appellant and his group of friends for a while, then took a bus with them to Seaside.  The group included appellant, his codefendant Dutra, a male named Pookie, a female named La Fay, and a couple of other males.  On the bus, she told the group she was 16 years old.

Once in Seaside, the group went to a liquor store and purchased alcohol, then went to a shed behind appellant's house where they drank, played cards, and listened to music. At some point in the evening, La Fay left with Dutra.  While they were gone, the victim danced with appellant.  Dutra returned soon after, and appellant, Dutra, Pookie, and appellant's cousin tried to get the victim to strip for them, which she refused to do.  She tried to leave, but appellant turned the lights off, and Dutra started touching her chest. She told him to get off her, to which he responded, "[w]hat are you going to do?"  She kicked him, he hit her in the face, and they started fighting.  Appellant kept turning the lights on and off, and when the room went dark, Dutra would continue beating her. Everyone else in the shed stood around watching and laughing excitedly.  The victim tried to get out of the shed several times, but each time she was pulled back inside, and Dutra continued to hit her.

---

[2]    The victim committed suicide in 2003.  The fact that she was deceased was not revealed to the jury.

Appellant eventually pulled the victim outside by her wrist. He let go of her so he could urinate on a fence. She tried to escape by fleeing through a hole in the fence but was caught in the alleyway on the other side by Dutra. She screamed and tried to get away but was trapped. Dutra resumed hitting her, then appellant, Dutra, and Pookie forced her back into the shed.

Once inside, appellant and Dutra both noticed they had been scratched by the victim and became angry. Dutra held the victim down on the couch and started choking her to the point that she felt she was going to lose consciousness. She heard someone say, "You're choking her. She's turning purple. You're going to kill her." Dutra let go of her, but then threw her on another couch and resumed hitting her in the face. She felt dizzy and pretended to be unconscious. As she lay on the couch, she heard appellant say, "We're gonna toss this bitch like a salad. Who's gonna go first?" She felt someone check her pulse, and she noticed her face was covered with blood. Her clothing was taken off her body, then everyone exited the shed but appellant. Appellant started kissing her, then turned her over and attempted anal intercourse. She yelled, and appellant turned her back over, slapped her on each side of the face, and raped her vaginally. After appellant finished, Pookie, appellant's cousin, and Dutra all took turns raping her as she continued to feign unconsciousness. Appellant then entered the shed and raped her a second time.

After the second rape, appellant told the victim to look in the mirror, and she saw her face was bruised and bloody. He reminded her that she had been fighting with Dutra and told her she was a "tough girl." He then told her to lie next to him on the couch and raped her a third time. She lay there for several hours until she was able to leave.

The next morning, the victim returned to her friend's house. Her friend's mother took her to the police station and then to the hospital.

8.

## V.     Appellant's Testimony.

Appellant elected to testify.  He acknowledged being around A.A. at parties, but claimed he was never alone with her and never did anything sexual with her.  With respect to S.Y., he claimed they had consensual intercourse, and they had met before the night in question.  As to A.N., he claimed he encountered her in a parking lot around noon and told her she needed to go home.  He denied giving her drugs or doing anything sexual with her.

## DISCUSSION

## I.     The Second Amended Information was not Defective on its Face for Failure to State a Public Offense.

In the second amended information, the People alleged that counts 5, 6, and 7, the three violations of section 288, subdivision (a) pertaining to A.A., occurred "[o]n or about and between May 1, 2014 and October 29, 2015."  A violation of section 288, subdivision (a), requires proof that the victim was "under the age of 14 years."  A.A. turned 14 years of age on August 16, 2015, so the date range included a period during which A.A. was not under the age 14 years.  Appellant contends that as a result the information did not state a public offense, and reversal is required.

### A.     *Background.*

At the start of trial, counts 5, 6 and 7 were charged in the first amended information as violations of section 288, subdivision (c)(1), lewd act upon a child aged 14 or 15, alleged to have occurred between August 16, 2015 and October 29, 2015.  Following A.A.'s testimony, the People filed the second amended information, which changed counts 5, 6, and 7, to violations of section 288, subdivision (a), with an alleged date range between May 1, 2014 and October 29, 2015.  Appellant did not demur to the second amended information or otherwise object.

9.

## B. Standard of review.

"A demurrer is not a proper means of testing the sufficiency of the *evidence* supporting an accusatory pleading. [Citation.] Rather, a demurrer lies only to challenge the sufficiency of the *pleading*. It is limited to those defects appearing on the face of the accusatory pleading, and raises only issues of law." (*People v. Biane* (2013) 58 Cal.4th 381, 388.) Thus, the People's " 'ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court.' " (*People v. Keating* (1993) 21 Cal.App.4th 145, 151.)

## C. Counts 5, 6, and 7 of the information stated a public offense.

As a threshold matter, respondent contends that appellant forfeited this claim by failing to demur to the second amended information. Appellant replies that because he relies solely on the legal ground that the information failed to state a public offense (§ 1004, subd. (4)), his claim is not subject to forfeiture.

We agree the claim has not been forfeited. "The legal grounds for demurrer to an accusatory pleading are limited to those specifically enumerated in Penal Code section 1004. [Citations.] Failure to assert one of the enumerated grounds, other than an objection to the jurisdiction of the court or that the facts stated do not constitute a public offense, 'shall be deemed a waiver thereof.' (Pen. Code, § 1012.)" (*People v. Biane*, *supra*, 58 Cal.4th at p. 388.) Therefore, despite appellant's failure to demur on the ground that the information did not state a public offense, "the defect can be raised on appeal." (*People v. Paul* (1978) 78 Cal.App.3d 32, 42.)

Although not subject to forfeiture, appellant's claim lacks merit because counts 5, 6, and 7 stated a public offense. A charge need only include "a statement that the accused has committed some public offense," which "may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved." (§ 952.) Here, the People met this requirement in each count by stating appellant was charged with "LEWD ACT UPON A CHILD … in violation of

10.

Penal Code section 288(a)," and including a brief description of the elements of the offense, including that the act was committed on "A.A., a child under the age of fourteen years."

Appellant contends the counts are subject to demurrer because the offenses were alleged to have occurred between May 1, 2014 and October 29, 2015, and A.A. turned 14 years old on August 16, 2015. In support, he cites section 955, which provides, in pertinent part: "The precise time at which the offense was committed need not be stated in the accusatory pleading … except where the time is a material ingredient in the offense."

Appellant's reliance on A.A.'s date of birth is misplaced. A demurrer is limited to the facial sufficiency of the information. (*People v. Biane*, *supra*, 58 Cal.4th at p. 388.) A.A.'s date of birth is not listed in the information, and there is no legal requirement that it must be included. Moreover, section 955 is inapplicable because the date of a violation of section 288, subdivision (a), is only material to the offense as it pertains to the age of the victim. Instead of listing A.A.'s date of birth in the information, the People stated a public offense by pleading that A.A. was under the age of 14. Ultimately, appellant's demurrer claim fails because nothing in the information suggests A.A. was age 14 or older at the time of the offenses.

We recognize that at the time the second amended information was filed, A.A.'s date of birth was in evidence and not subject to dispute. As we explained above, this does not affect our conclusion, as our analysis is not concerned with the evidence presented at trial. Even assuming we could consider A.A,'s date of birth for purposes of this demurrer analysis, we would still reach the same conclusion. Counts 5, 6, and 7 were alleged to have occurred between May 1, 2014 and October 29, 2015, and A.A. turned 14 years old on August 16, 2015. Thus, while acts committed after A.A.'s 14th birthday could not support a violation of section 288, subdivision (a), the date range of the allegations also encompassed a window of approximately 15 months during which A.A.

11.

was under the age of 14. Accordingly, counts 5, 6, and 7 would still state a public offense, and this claim lacks merit.

## II. The Jury Instructions did not Mislead the Jury into Believing it Could Convict Appellant of Section 288, Subdivision (a), When the Victim was 14 Years Old.

The trial court's instructions to the jury contained references to the same date range listed in counts 5, 6, and 7 in the second amended information. Appellant contends these references misled the jury into believing it could find appellant guilty of section 288, subdivision (a) for acts committed at any point during that date range, even if A.A. was 14 years old at the time of the act.

### A. Background.

The jury instructions included the date range listed in the second amended information in two places. The first was in CALCRIM No. 207, which instructed the jury that the People are only required to prove that the alleged offense happened reasonably close to the dates alleged. The second was in CALCRIM No. 3501, which instructed the jury on the unanimity requirement when evaluating generic testimony. Both instructions contained the following sentence: "It is alleged that the crimes in Counts 5-7 occurred between May 1, 2014 and October 29, 2015."

The jury was also instructed on the elements of section 288, subdivision (a). (CALCRIM No. 1110.) The instruction specified that the People are required to prove the victim "was under the age of 14 at the time of the act," and included no reference to any date range.

### B. Standard of review.

We review a claim of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant." (*People v. Cross*

(2008) 45 Cal.4th 58, 67–68; *People v. Bacon* (2010) 50 Cal.4th 1082, 1110.) "We interpret the instructions so as to support the judgment if they are reasonably susceptible to such interpretation, and we presume jurors can understand and correlate all instructions given." (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

### C.    Instructional error did not occur.

We conclude there is no reasonable likelihood the jurors misunderstood the jury instructions. Appellant argues the jurors may have mistakenly believed they could find appellant guilty of section 288, subdivision (a) so long as the act occurred within the May 1, 2014 through October 29, 2015 date range. However, the jury was clearly and unambiguously instructed that an element of section 288, subdivision (a) is that the victim was under the age of 14 at the time of the act, and that appellant could not be found guilty unless each element was proven beyond a reasonable doubt. Although the May 1, 2014 through October 29, 2015 date range was included elsewhere in the jury instructions, the prosecutor clarified any potential ambiguity in closing argument. (See *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220–1221, disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) The prosecutor made clear her theory was the evidence showed A.A. was under the age of 14 when all three incidents occurred, stating:

> "We know that [A.A.] was under 14 years old. We got her date of birth in there: August 16, 2001…. She was 12 years old [when she met appellant] and she reported to her school in October of 2015 when she was 14. That was her first year of 9th grade. She said the incident happened when she was 13 years old and in 8th grade. So we know that based on the timeline [of when she first met appellant] and when she reported, how old she would be during the period she was in 8th grade, that she was 13 years old for all the incidents."

Given the prosecutor's argument and the trial court's clear instruction that the jury must find the victim was under the age of 14 at the time of the act to convict appellant of

section 288, subdivision (a), there is no reason to believe the jury's verdict was based on an incorrect legal theory and, therefore, instructional error did not occur.

### III. Appellant's Convictions Were Supported by Sufficient Evidence.

In addition to his challenges related to the date range alleged in counts 5, 6, and 7, appellant contends the evidence was insufficient that A.A. was under the age of 14 when the acts occurred, and therefore the corresponding section 288, subdivision (a) convictions were not supported by substantial evidence.

#### A. *Standard of review.*

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Tripp*, *supra*, 151 Cal.App.4th at p. 955, italics omitted.)

"In California conviction of a sex crime may be sustained upon the uncorroborated testimony of the [victim]." (*People v. Poggi* (1988) 45 Cal.3d 306, 326.) Moreover, "[i]n deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) " '[I]t is for the trier of fact to consider internal inconsistencies in testimony' [citation], and it is for us when reviewing for substantial

evidence to resolve the inconsistencies in favor of the verdict." (*People v. Collins* (2021) 65 Cal.App.5th 333, 345.)

### B. Counts 5, 6, and 7 were supported by sufficient evidence.

#### 1. Counts 5 and 6.

Counts 5 and 6 pertain to the first and last incident, respectively, in which appellant took A.A. outside during a party, pushed her up against a car, and rubbed his penis against her buttocks.

A.A. was unable to recall precisely when each incident occurred, but she remembered she was age 13 and in the eighth grade. She explained that she first met appellant when she was 12 years old and in seventh grade, and that nothing inappropriate happened until she was 13 years old and in eighth grade. When asked how she remembered she was 13 years old when the first incident (count 5) occurred, she explained: "Because I was 14 when I started high school, and I know who I was with, who I was dating at the time." When asked how old she was when the second incident (count 6) occurred, she reiterated that it occurred when she was 13 years old and in the eighth grade. No other evidence presented at trial contradicted A.A.'s recollection of her age at the time she was assaulted. Accordingly, A.A.'s testimony provided sufficient evidence from which a rational trier of fact could have found A.A. was under 14 years of age at the time counts 5 and 6 were committed.

#### 2. Count 7.

Count 7 pertains to the incident in which appellant picked A.A. up in his car and touched her thighs.

A.A. first testified that she was age 14 when this incident occurred and had just started high school. She did not remember the exact date, but recalled the incident happened in August, "a little bit after school started." She reported the incident to a high school administrator on October 29, 2015. She initially stated she reported the incident

the day after it happened, but later in her testimony she clarified it could have occurred months prior to her report. On cross-examination, she acknowledged that she told a police officer in October 2015 that the incident occurred in September, but she explained that was only her best guess, and she could not remember exactly when it happened.

On redirect by the People, A.A. testified the incident happened when she was in eighth grade and was 13 years old. When recalled by the prosecution later in the trial, she again testified the incident happened when she was in eighth grade, before she reached high school. Neither party asked A.A. to explain the discrepancy in her testimony regarding how old she was when the incident occurred.

Abel Loza, a counselor at A.A.'s high school, testified that A.A. reported an incident involving her "uncle" on October 29, 2015. He recalled that A.A. stated the incident occurred a few weeks or a few months prior.

It is apparent from the record that A.A struggled to recall the dates of a traumatic event that occurred five years prior to trial. However, we conclude her testimony was still sufficient to support the verdict as to this count. The verdict indicates the jury found A.A. credible and accepted her testimony that the incident occurred when she was 13 years old. As we explained above, it is not the province of this court to make credibility assessments or resolve conflicts in the evidence when reviewing the record for substantial evidence. A.A.'s testimony that she was 13 years old at the time of the incident, while contradicted by her testimony earlier in the trial, was not "physically impossible or inherently improbable." (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.) As the sole finder of fact, the jury was entitled draw the conclusion from her testimony that she was 13 years old at the time of the incident. Therefore, the verdict as to count 7 was supported by substantial evidence.

16.

**IV.     Appellant Was Properly Sentenced as a Third Strike Offender.**

Appellant contends his sentence under the "Three Strikes" law is invalid because the language of the jury verdict forms did not foreclose the possibility that the jurors only found true that he suffered one strike conviction. He argues the jury was only asked to make a finding that he suffered one conviction that constitutes a prior strike, and therefore he should not have been sentenced as a third strike offender.

### A.     *Background.*

Prior to trial, appellant moved to bifurcate allegations relating to his prior convictions, including two prior strike conviction allegations (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), habitual sex offender allegations (§ 667.71), allegations that he suffered a prior sex offense (§ 667.61, subds. (a) & (d)), and allegations he suffered a prior serious felony conviction (§ 667, subd. (a)(1)). Appellant's counsel also indicated he would not be waiving his right to a jury trial on the truth of the prior convictions. The trial court denied the motion, reasoning bifurcation would be meaningless because the court had already granted the People's motion to admit evidence of appellant's prior sex offenses pursuant to Evidence Code section 1108.

At trial, in addition to the prior victim's trial testimony, the People introduced certified court records from Monterey County Superior Court showing a jury convicted appellant of four counts of forcible rape in concert (§ 264.1) and two counts of forcible rape (§ 261, subd. (a)(2)). Appellant admitted the truth of his prior convictions when he testified.

The jurors received three instructions pertaining to appellant's prior convictions. In the first two instructions, which dealt with the prior sex offense conviction allegation and the habitual sex offender allegation, the trial court instructed the jury that it must decide whether appellant was "previously convicted of Rape, in violation of Penal Code section 261(a)(2), or Rape in Concert, in violation of Penal Code section 264.1" The third instruction guided the jurors on prior conviction allegations in a nonbifurcated trial

17.

(CALCRIM No. 3100). In the instruction, the court explained "[i]t has already been determined that [appellant] is the person named in exhibit 1," the certified Monterey County Superior Court records of appellant's 1995 convictions, and that the jury must "decide whether the evidence proves that [appellant] was convicted of the alleged crimes." The trial court then explained that the People alleged appellant has been convicted of the following offenses:

> "Two violations of Penal Code section 261(a)(2), on July 18, 1995, in the Monterey Superior Court, in Case Number SC950855B.

> "Four violations of Penal Code section 264.1 on July 18, 1995, in the Monterey Superior Court, in Case Number SC950855B."

The verdict forms for each of the seven counts included special allegations that appellant suffered a prior sex offense conviction and was a habitual sex offender. The special allegation finding for the prior sex offense conviction included the following language: "[Appellant] was previously convicted of Rape, in violation of Penal Code section 261(a)(2) and/or Rape in Concert, in violation of Penal Code section 264.1" The special allegation finding for the habitual sex offender allegation included similar language: "[Appellant] was previously convicted of a crime in violation of Penal Code section 261(a)(2) and/or PC 264.1 on 07/18/95 in the Superior Court of Monterey County." The jury found all the special allegations "True."

The trial court sentenced appellant as a third strike offender. Appellant did not object to his sentence under the Three Strikes law or otherwise contend that the consideration of his prior strike convictions was improper.

### B. Applicable legal standards.

Under the Three Strikes law each qualifying prior strike conviction must be pled and proved beyond a reasonable doubt. (§§ 667, subd. (c), 1170.12, subd. (a); see *People v. Garrett* (2001) 92 Cal.App.4th 1417, 1433.) A separate finding must be made as to each prior conviction. (§ 1158; *People v. Williams* (2002) 99 Cal.App.4th 696, 700.)

18.

**C.** ***The evidence that appellant suffered multiple prior strike convictions was overwhelming. Any presumed error was harmless.***

It appears the trial court and the parties concluded that requiring the jury to make separate findings appellant suffered prior strike convictions would have been redundant because forcible rape (§ 261, subd. (a)(2)) and rape in concert (§ 264.1) are both strike offenses. (§ 667.5, subd. (c)(3), (18).) At trial, the evidence that appellant suffered multiple prior strike convictions was overwhelming: the prosecution submitted certified records of conviction, appellant admitted suffering the convictions, and the jury heard the prior victim's trial testimony in which she described appellant's underlying criminal conduct in detail. Appellant did not contest the truth of his prior convictions at trial, and the jury found true all 14 of the special allegations that were based on his prior convictions for forcible rape and rape in concert. At sentencing, appellant did not question that the jury found he suffered multiple prior strike convictions.

Nonetheless, appellant now argues the "and/or" language in the verdict forms for the special allegations only required the jury to find that appellant had been convicted of either forcible rape or rape in concert, but not both. He contends that the jury only found appellant suffered one prior strike, and that the absence of a second finding had the same effect as a "not true" finding by the jury.

Considering the overwhelming evidence appellant suffered multiple prior strike convictions, and the jury's finding of guilt on every count and that every special allegation was true, it is inconceivable that the jury only found appellant suffered one prior strike conviction. Appellant was convicted of all his prior strike convictions in the same trial, so the evidence establishing the truth of each conviction was essentially identical. There is no basis on which a rational jury could find appellant was convicted of only one prior strike conviction, but not two or more prior strike convictions.

Given this background, we need not discuss appellant's claim in detail because any presumed error was harmless. In *People v. Epps* (2001) 25 Cal.4th 19, 28–30 (*Epps*),

19.

our high court held the right to a jury trial on the truth of a prior conviction allegation is "purely a creature of state statutory law," and therefore subject to review for harmless error. Our high court also held harmless error applies in the analogous context of the denial of the Sixth Amendment right to a jury trial where the jury was not asked to make a factual finding on the truth of aggravating circumstances. (*People v. Sandoval* (2007) 41 Cal.4th 825, 838–839.)

Based on the holding in *Epps,* we believe the less onerous standard of review set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836, is applicable here. However, we conclude the presumed error was harmless under any standard. Under the more stringent "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24, the error was harmless "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found" the allegation true. (*People v. Sandoval*, *supra*, 41 Cal.4th at p. 839.) As we explained above, the evidence appellant suffered multiple prior strike convictions was uncontroverted and so overwhelming that no reasonable juror could conclude appellant suffered only one prior strike conviction. Accordingly, any presumed error was harmless beyond a reasonable doubt.

## V. The Trial Court did not Abuse its Discretion in Admitting Evidence of Appellant's Prior Sex Offenses Pursuant to Evidence Code Section 1108.

Appellant contends the trial court should have denied the People's motion to admit evidence of appellant's prior sex offenses. He argues his prior offenses were much more inflammatory than the charged offenses because they involved physical assault and gang rape, and as a result, the jury was so prejudiced against him that he did not receive a fair trial.

### A. Background.

Prior to trial, the trial court granted the People's motion in limine to admit evidence of appellant's prior offenses pursuant to Evidence Code section 1108. The trial

20.

court concluded "there is a reason we have [Evidence Code section] 1108, and I think this case is probably one of these reasons." The trial court explained that appellant's prior conduct was not too remote in time, given that he was incarcerated until 2011 for his prior offenses, and that there were "enough similarities among victims in order to warrant" admission. Finally, the court noted that the inflammatory impact of the prior conduct would be lessened by the fact that the prior victim's testimony would be read for the jury, as opposed to her testifying in person.

### B.    Standard of review.

Evidence Code section 1108, subdivision (a), states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Evidence Code section 1108 provides an exception to the general rule that " 'propensity evidence is not admissible to prove a defendant's conduct on a specific occasion.' " (*People v. Dworak* (2021) 11 Cal.5th 881, 899.) Before such evidence is admitted, the trial court must "engage in a careful weighing process under [Evidence Code] section 352." (*People v. Falsetta* (1999) 21 Cal.4th 903, 916–917.) This requires the trial court to "undertake[] a careful and specialized inquiry to determine whether the danger of undue prejudice from the propensity evidence substantially outweighs its probative value." (*People v. Merriman* (2014) 60 Cal.4th 1, 41.) "Among the factors to consider are the ' "nature, relevance, and possible remoteness [of the evidence], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright

admission, such as admitting some but not all of the defendant's other sex offenses." ' " (*People v. Erskine* (2019) 7 Cal.5th 279, 296.)

"On appeal, we review the admission of other acts or crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion." (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104.) "As a reviewing court, we accord deference to a trial court's determination that the probative value of a particular piece of evidence outweighs any danger of prejudice." (*People v. Dworak*, *supra*, 11 Cal.5th at p. 899.) We will not disturb that exercise of discretion " ' " ' "*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " ' " (*People v. Miles* (2020) 9 Cal.5th 513, 587–588.)

### C. Evidence of appellant's prior sex offenses was properly admitted.

Appellant's argument that his prior conduct was significantly more inflammatory than the charged offenses because it involved physical violence as well as sexual assault is unavailing. While we agree appellant's prior conduct was appalling, the charged offenses were also highly inflammatory. Appellant victimized three different women, including two 13-year-old girls, one of whom he gave methamphetamine to prior to the assault. While the brutal violence in appellant's prior offenses cannot be minimized, we do not find it to be so much more inflammatory than the charged conduct that it posed " 'an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' " (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.)

Conversely, appellant's prior sex offenses were highly probative evidence of his propensity to commit further sex offenses, which is inherently relevant under Evidence Code section 1108. (See *People v. Falsetta*, *supra*, 21 Cal.4th at p. 915 ["Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes."].) The probative value of the prior sex

offenses was further enhanced by their similarity to the charged offenses. While the circumstances of each of appellant's offenses are different, in every instance appellant preyed on a victim in a vulnerable situation and took further steps to isolate them before effectuating his assaults.

We also find that the risk of undue prejudice was minimized by the fact that appellant suffered convictions because of his prior conduct and was sent to prison. As our high court has explained, "the prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual *convictions* and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses." (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 917.)

In sum, while we do not doubt that the evidence of appellant's prior sex offenses had a significant impact on the jury, the impact was the result of the highly probative value of the evidence rather than undue prejudice. Accordingly, the trial court did not abuse its discretion by admitting evidence of appellant's prior sex offenses pursuant to Evidence Code section 1108.

### DISPOSITION

The judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


SMITH, J.

23.